In the Matter of M. Jon LOBDELL.

No. 56S00–8807–DI–678.

Supreme Court of Indiana.

Nov. 7, 1990.

See also 540 N.E.2d 1241.

No Appearance for respondent.

Sheldon Breskow, Executive Secretary, Mark Jones, Staff Atty., Indianapolis, for

Indiana Supreme Court Disciplinary Com'n.

## PER CURIAM.

This case is before us on a two count complaint charging the Respondent, M. Jon Lobdell, with violating the *Rules of Professional Conduct for Attorneys at Law.* The Hearing Officer appointed pursuant to Admission and Discipline Rule 23, Section 11(b) has tendered his findings of fact, conclusions of law and recommendations. Neither party has petitioned for review of the Hearing Officer's report.

In reaching the ultimate determination as to whether an attorney engaged in misconduct, this Court examines *de novo* all matters presented before it. See *In re Hampton* (1989), Ind., 533 N.E.2d 122. However, when, as in this instance, the Hearing Officer's findings are not challenged, they are accepted and approved, but this Court reserves the right to evaluate such findings and reach its own conclusion as to misconduct. *In re Fox* (1989), Ind., 547 N.E.2d 850.

The Respondent, a member of the Bar of this state, is under a temporary order of suspension pending the final outcome of this proceeding. As to Count I, we find that, on December 15, 1986, Theodore Vyhnanek retained the Respondent to represent him in a bankruptcy proceeding. The Respondent agreed to represent Vyhnanek for three hundred dollars ($300.00) plus a filing fee of ninety dollars ($90.00). The Respondent further agreed that he would file the petition as soon as the filing fee was paid, and that the rest of the fee would be paid as Vyhnanek was able. Vyhnanek gave Respondent a check for the filing fee plus ten dollars, which check was deposited by the Respondent. On January 6, 1987, Vyhnanek paid another fifty dollars ($50.00) and the Respondent had him sign a petition for bankruptcy.

When creditors continued to call Vyhnanek requesting payment, he attempted to contact the Respondent and was eventually provided with a cause number for his bankruptcy case. The cause number, however, was not the number of Vyhnanek's case.

When contacted, the Respondent apologized for the error and provided another cause number.

On February 22, 1987, Vyhnanek paid Respondent $100.00 more toward his fee and left a note for the Respondent that he, Vyhnanek, needed to prevent his creditors from garnishing his wages.

Within the next week the Respondent assured Vyhnanek that the bankruptcy had been filed and that he would get an automatic stay to prevent garnishment. Vyhnanek's employer subsequently received and provided to Vyhnanek a file-marked copy of a "Notice of Automatic Stay Affecting Wage Garnishment or Execution." The notice was signed by the Respondent and bore the second cause number provided by the Respondent.

Shortly thereafter, Vyhnanek was advised that the second cause number provided to him by the Respondent was incorrect. The Respondent provided a third cause number which Vyhnanek conveyed to his creditors, but this also turned out to be incorrect.

Vyhnanek retained another attorney and, during the period of May, 1987, through August, 1987, attempted to obtain his file from the Respondent. At one point the Respondent agreed to forward the file, and in another instance he advised that he had already sent the file to the new attorney.

The Respondent never filed the bankruptcy petition and never returned any part of the file. He never returned the fees which he had been paid for this matter save for $35.00 which he returned sometime in late May, 1987. This amount was returned pursuant to Respondent's earlier offer to several of his clients of a 10% "rebate" for early payment of the balance of all fees owed.

Vyhnanek's new attorney filed bankruptcy on behalf of Vyhnanek on September 2, 1987. However, as a result of Respondent's failure to file, Ford Motor Credit Co., one of Vyhnanek's creditors which had previously been amenable to reducing the auto payments so that the debt could be handled outside bankruptcy, now insisted

upon payment in full with the alternative being repossession. Vyhnanek surrendered the vehicle. Another creditor obtained a lien on Vyhnanek's bank account which lead to insufficient funds in his checking account causing additional charges in the amount of $229.63.

Under Count II, we find that in May, 1986, the Respondent moved into a house which belonged to Lewis Maggio in Enos, Indiana. Maggio had agreed that the Respondent could live in and set up his law practice in the house in return for which Respondent was to provide legal services for Maggio and his business at no extra charge.

Maggio also employed Respondent in a nonlegal capacity in Maggio's nursery business. Their contract provided for payment of $4,000.00 to cover the term of employment from May 12, 1986, to August 1, 1986. One half of the amount was to be reimbursed to Maggio from a job training program.

On August 11, 1986, the Respondent filed bankruptcy proceedings on behalf of Maggio d/b/a Maggio Nursery. The bankruptcy trustee handling Maggio's case would not accept Maggio's personal checks unless they were certified. The parties came to an understanding whereby the Respondent would accept Maggio's checks, deposit them into Respondent's trust account, and forward checks to the trustee written on Respondent's trust account.

Maggio insisted that one of his creditors who held the mortgage on Maggio's farm be paid outside of the bankruptcy plan. The same arrangement was set up for payments to this creditor through Respondent's trust account.

Pursuant to this agreement, Maggio began writing checks to Respondent. In the spring of 1987 Maggio moved to Illinois to run another nursery business there. Prior to moving, Maggio had asked the post office to forward his mail to his Illinois address. Maggio noticed in the early summer of 1987 that he was no longer receiving his mail and, upon checking with the post office, was advised that someone from his office had cancelled the order to forward the mail.

Shortly thereafter Maggio received a letter from the trustee stating that Maggio was significantly behind in his payments. He learned further that he was also behind in payments to his mortgage holder.

In an effort to become current on his payment, Maggio forwarded three checks to the Respondent. One check in the amount of $2,559.38 was for the mortgage holder while the other two, totalling $6,000, were made payable to the Respondent but were also for the mortgage holder. Maggio later learned that the Respondent had forwarded the check for $2,559.38 to the mortgage holder but of the remaining $6,000 he had only forwarded $3,440.62.

From November, 1986, to July, 1987, Maggio issued checks totalling $8,870.64 made payable to the Respondent for payment to the bankruptcy trustee. Of the $8,870.64 the Respondent forwarded only $5,024.94 to the trustee.

In September, 1987, Maggio confronted the Respondent about this matter. The Respondent admitted that he had used the money and stated that he fully intended to repay. However, the Respondent never established a trust fund as originally agreed, never repaid the money nor did he ever forward any more payments to the trustee. The Respondent kept approximately $6,405.00 of funds entrusted to him for delivery to either the trustee or Maggio's mortgage holder. The Respondent may have had a valid claim for reimbursement for miscellaneous items of no more that approximately $405.00.

The foregoing findings amply establish that the Respondent engaged in the charged misconduct. He failed to act with reasonable diligence and promptness, in violation of Rule 1.3 and failed to promptly return property which his client was entitled to receive in violation of Rule 1.14(b). By his conduct, the Respondent committed criminal acts which reflect adversely on his honesty, trustworthiness and general fitness as a lawyer, in violation of Rule 8.4(b). He engaged in conduct involving dishonesty, fraud, deceit and misrepresentation

and in conduct that is prejudicial to the administration of justice, in violation of Rule 8.4(c) and (d) of the *Rules of Professional Conduct.*

We have before us an attorney who repeatedly lied to his client, damaged his client's interests and misused his client's funds. We are convinced that such conduct renders the Respondent unfit to be entrusted with the interests of others. Accordingly, we conclude that Respondent's misconduct warrants the strongest sanction available, disbarment. It is, therefore, ordered that the Respondent, M. Jon Lobdell, is disbarred from the practice of law.

Costs of this proceeding are assessed against the Respondent.

SHEPARD, C.J., and DeBRULER, GIVAN and PIVARNIK, JJ., concur.

DICKSON, J., not participating.