**In the Matter of Clifford D. SHAUL.**

**No. 32S00–8706–DI–579.**

Supreme Court of Indiana.

May 28, 1992.

Frank W. Spencer, Indianapolis, for respondent.

David Hughes, Indiana Supreme Court Disciplinary Com'n, Indianapolis, for Indiana Supreme Court Disciplinary Com'n.

## DISCIPLINARY ACTION

### PER CURIAM.

This case is before us on a two count disciplinary complaint charging the Respondent, Clifford D. Shaul, with violating the *Code of Professional Responsibility for Attorneys at Law.* Pursuant to Admission and Discipline Rule 23, Section 11(b), this court appointed a Hearing Officer in this matter. After a hearing and several postponements of the findings pursuant to the parties' request to continue efforts to reach a conditional agreement, the Hearing Officer has tendered his report on findings of fact and conclusions of law.

■ Neither party has petitioned for review, and this matter is now before us for final judgment. This process involves a *de novo* examination of all matters tendered before the court. When, however, the Hearing Officer's findings are unchallenged, as in this case, they may be accepted, but this Court reserves the right to evaluate such findings and reach a conclusion as to misconduct. *In re Vogler* (1992), Ind., 587 N.E.2d 678; *In re Huebner* (1990), Ind., 561 N.E.2d 492; *In re Fox* (1989), Ind., 547 N.E.2d 850.

Accordingly, we find that the Respondent is a member of the Bar of this state, having been admitted in October of 1975. Under Count I, we find that the Respondent was retained to represent the estate of Erma Hill who had died intestate on January 18, 1984. Erma Hill was 83 years old when she died and was survived by her husband, Herbert Hill, and two adult daughters from a prior marriage. Prior to the her death, Erma and Herbert Hill, who could not walk and had very poor eyesight, decided to appoint Horner his attorney-in-fact to handle his affairs. Horner was acquainted with the Respondent and called upon him to draft the power of attorney, which he did for $100.00. It was also Horner who retained the Respondent to handle Erma Hill's estate.

At the time of her death, Erma Hill was the sole owner of some real estate in West Virginia; all her other assets were located in Indiana and were held either jointly with her husband and passed to him by operation of law, or were liquid assets owned solely by her or miscellaneous items of personal property.

Some three months after the Respondent was retained, one of Erma Hill's daughters wrote to him inquiring about the progress in the estate. The Respondent wrote back advising, among other things, that "(a)ll of the paperwork has been filed;" "(w)e are waiting for the court to issue letters of administration;" and "(y)our mother's estate is insolvent. By that I mean that the assets are $2,211.02 and the liabilities amount to $5,060.98."

In fact, no paperwork had yet been filed in the estate and letters of administration were never requested by the Respondent or issued to any party. Thereafter, purporting to act under the provisions of IC 29-1-8-1, et seq., the Respondent filed a pleading in the estate entitled "Affidavit For Transfer Of Personal Property Without Administration." The pleading listed personal property items with an aggregate value of $3,274.14 and claims of creditors in the amount of $5,060.98. Among the debts listed were burial expenses, funeral home expenses, some medical bills and $1,355 as attorney and administration fees for the Respondent. In the affidavit, the Respondent requested that all of the personal property be transferred to him in order for him to make payment of decedent's debts and he further stated that he "charges himself with the responsibility of proper disbursements of the funds according to the provisions of the Indiana Code." The trial court granted Respondent's request and entered an order transferring the as-

sets of decedent's estate to the Respondent as "claimant."

At the time of hearing before the Hearing Officer, which was more than four years after Erma Hill's death, the Respondent had never paid the $770 owed to the cemetery, despite there being sufficient funds to pay this sum. As a result, Erma Hill's grave had not been marked with a headstone. The funeral home attempted to collect the amount owed it by the Erma Hill estate from the Respondent, and finally, nearly two years after the death, the Respondent paid the funeral home bill.

On March 2, 1984, soon after Erma Hill's death, Herbert Hill also passed away. At Horner's request, the Respondent agreed to also handle Herbert's estate. As with Erma's estate, the Respondent filed on October 11, 1984, an "Affidavit For Transfer Of Personal Property Without Administration" in the Herbert Hill estate. Therein, the Respondent stated that the estate had assets totalling $6,020.22 and liabilities in the exact same amount. Included among the liabilities were $2,350 as attorney fees for Respondent; and $1,786.84 funeral home expenses for Erma's funeral.

As in the affidavit filed in Erma's estate, the Respondent again charged himself with the responsibility of proper disbursement of funds according to the provisions of the Indiana Code. In this affidavit, the Respondent also stated under oath that "at the time of his death, the decedent had no heirs at law." In fact, Herbert Hill was survived by various relatives, including a niece and grandniece, a fact which Horner knew and had brought to the Respondent's attention. The Respondent secured an order on said affidavit, and all assets were transferred to him.

Horner had called the Respondent a number of times to inquire as to the status of the estates but eventually gave up trying to obtain an accounting. None of Herbert Hill's heirs were ever given notice or accounting by the Respondent of the affairs of the estate.

Although the Respondent never accounted to either Erma's heirs or Herbert's heirs, and never completed the administra-

tion of either of their affairs, he paid himself attorney's fees totaling $3,100. He placed the assets from both estates in his trust account and paid fees and expenses therefrom without regard to which estate had incurred the obligation.

Under Count II, we find that the Respondent was retained by Daniel Summitt to pursue an action against the builders of Summitt's house. Summitt paid the Respondent $300. The Hearing Officer found that although the Respondent performed some work, he failed to communicate with his client despite numerous requests for information. On December 19, 1986, Summitt dismissed the Respondent in writing and requested the return of his materials and a refund of the $300 retainer. The Respondent failed to return the requested materials, and did not return the $300 fee until February 9, 1988.

■ The foregoing findings clearly establish that the Respondent engaged in conduct involving deceit and misrepresentation, conduct prejudicial to the administration of justice, and conduct which reflects adversely on his fitness to practice law, all in violation of D.R. 1–102(A)(4), (5) and (6) of the *Code of Professional Responsibility for Attorneys at Law*. In light of the fact that he failed to complete the services for which he was hired, the Respondent's fee was clearly excessive and in violation of D.R. 2–105(A). The findings further establish that the Respondent knowingly made false statements of fact and law in violation of D.R. 7–102(A)(5); he failed to maintain proper records of the client's funds and other property; and he failed to provide an appropriate accounting of such funds, in violation of D.R. 9–102(B)(3) and (4).

By his conduct set out in the findings under Count II, the Respondent violated D.R. 6–101(A)(3) in that he neglected a legal matter entrusted to him; he violated D.R. 7–101(A)(2) by failing to carry out a contract of employment; and he violated D.R. 9–102(B)(4) by failing to promptly deliver the client's property as requested.

Having concluded that the Respondent engaged in misconduct, we must now assess an appropriate sanction. It is evident that the Respondent deceived the trial court and the heirs and misused the statutory process, all for his own financial benefit. Having done so, he exacerbated his conduct by failing to carry out the service for which he was hired. We find that the sort of deceitful conduct set out in this case warrants a period of suspension from the practice of law. It is, therefore, ordered that the Respondent, Clifford Shaul, is suspended from the practice of law for a period of not less than one (1) year beginning June 26, 1992.

Costs of this proceeding are assessed against the Respondent.