**In the Matter of A. Luis ORTIZ.**

**No. 49S00–9107–DI–554.**

Supreme Court of Indiana.

Dec. 16, 1992.

Candace W. Trivedi, Indianapolis, for respondent.

Charles W. Kidd, Disciplinary Comm'n of Indiana Supreme Court, Indianapolis, for Indiana Supreme Court Disciplinary Comm'n.

PER CURIAM.

The Respondent in this proceeding, A. Luis Ortiz, has been charged with engaging in conduct intended to disrupt a tribunal, engaging in conduct which is prejudicial to the administration of justice, and violating a disciplinary rule, in violation, respectively, of Rules 3.5(c), 8.4(d), and 8.4(a) of the *Rules of Professional Conduct for Attorneys at Law*. In accordance with the procedure set forth in Ind. Admission and Discipline Rule 23, a Hearing Officer was appointed, a hearing was conducted, and the Hearing Officer has tendered findings, conclusions and a recommendation to this Court. Neither party has petitioned for review.

█ In professional disciplinary proceedings in which there is no challenge to the Hearing Officer's tendered report, the findings, conclusions, and recommendations are accepted, subject to this Court's authority to reexamine, *de novo*, the proceedings below and reach an independent determination. *In re Vogler* (1992), Ind., 587 N.E.2d 678; *In re Huebner* (1990), Ind., 561 N.E.2d 492; *In re Fox* (1989), 547 N.E.2d 850.

Applying the above process, this Court now finds that the Respondent, an attorney admitted to the practice of law in this state and subject to the disciplinary jurisdiction of this Court, represented a criminal defendant in the Tippecanoe Superior Court. On January 17, 1991, Respondent's client was convicted of a felony and found not guilty of another offense. On the following day, the Respondent represented this client during the habitual offender phase of the proceedings. During this phase of the case, certified copies of the defendant's criminal record were presented to the jury. During the rebuttal closing argument, the deputy prosecutor (Mr. Bean) referred to an arrest of the defendant, and Respondent objected

to the reference as being outside the record. The objection was overruled, and the deputy prosecutor elaborated to the jury on other arrests.

The jury was sent to lunch, and the court conducted a conference on the record, in chambers. The judge was advised by the bailiff that several members of the jury had commented that they did not see all of the exhibits and ruled that the exhibits would be placed on a table in the court room. The jurors would be permitted to file past and review the exhibits. Respondent placed on record a continuing objection at this point.

Shortly thereafter, Respondent stated to the judge, "I have never done this, but I am doing (sic) to (do) it, you're not going to like this, unless you want to arrest me, I'm leaving. I do not believe in going in there in front of the jury and allow the State to railroad my client into a conviction by uncharged, unconvicted ... misconduct." After being admonished by the judge, Respondent added, "... I'm leaving, I will walk out, I will walk out of that Court room, Your Honor, I will walk." At this point, the Respondent left the Judge's chambers, returned to the court room where the following colloquy took place:

"MR ORTIZ: Unless I'm under arrest, Your Honor, I'm leaving.

THE COURT: Mr. Ortiz—

MR. ORTIZ: Your Honor, I—

THE COURT: I'm directing you to sit down at Defense Counsel table right now.

MR. ORTIZ: Your Honor, I'm not—

THE COURT: You have a client to represent.

MR. ORTIZ: With all respect—with all respect to the Court, Your Honor, I'm not going to be coming back."

The trial judge cited the Respondent for direct criminal contempt, but Respondent still refused to be seated, and a scuffle ensued with the Deputy Sheriff assigned to the Court, as follows:

"THE COURT: I'm ordering you to sit down, right now.

MR. ORTIZ: Your Honor, I refuse.

THE COURT: Gentlemen, set him down.

DEPUTY: Mr. Ortiz, please sit down.

MR. BEAN: Come on.

MR. ORTIZ: No.

MR. BEAN: Have a seat.

MR. ORTIZ: No.

DEPUTY: Sit right here, please.

MR. ORTIZ: I'm not going to sit down.

DEPUTY: Come on, please.

THE COURT: Mr. Ortiz will walk, won't you Mr. Ortiz?

MR. ORTIZ: Let go of ·me! Let go!

DEPUTY: I'm going to put cuffs—

MR. ORTIZ: Let go of me!

DEPUTY: Then have a seat.

MR. ORTIZ: I'm not going to sit down at the Defense table.

THE COURT: Yes, you are Mr. Ortiz.

MR. ORTIZ: No, sir, I'm not. Fire me, God Damn it, fire me!

THE COURT: No.

MR. ORTIZ: Fire me!

DEPUTY: Mr. Ortiz—

THE COURT: Please sit down.

DEFENDANT: I don't know what in the hell is going on.

MR. ORTIZ: Release me.

THE COURT: Mr. Ortiz, please sit down.

MR. ORTIZ: Go ahead, fire me.

THE COURT: Mr. Ortiz—

MR. ORTIZ: Fire me!

THE COURT: Mr. Ortiz—

MR. ORTIZ: Just let go of me.

DEPUTY: You know I can't, I have orders from the Judge.

MR. ORTIZ: Just fire me.

DEFENDANT: Okay, you're fired.

MR. ORTIZ: There—

THE COURT: Please sit down, Mr. Ortiz.

MR. ORTIZ: I have no client—

THE COURT: Yes, you do.

MR. ORTIZ: I have no client—

THE COURT: Yes, you do, sit down. Please sit down.

MR. ORTIZ: Alright, I'll sit down."

The Respondent was seated next to his client, and the trial judge ordered the jury returned to the court room. At this point, the following exchange took place:

"MR. ORTIZ: Judge, I'm telling you I'm walking out in front of the jury, I will get up, there will be a scene in front of this jury."

The jury was returned to the court room and the discussion continued as follows:

"DEPUTY Please sit down.

MR. ORTIZ: Don't touch me.

DEPUTY: You realize that I am an Officer of the Court.

MR. ORTIZ: I know that.

DEPUTY: If you hit me—

MR. ORTIZ: I'm not hitting you—

DEPUTY: You will be charged with a Class D Felony—

MR. ORTIZ: I'm not hitting you—

DEPUTY: And you will be disbarred, now you make a choice.

MR. ORTIZ: I'm not going to hit you.

THE COURT: Ladies and Gentlemen, please be seated. Let's let the record show that Defense counsel is present and Mr. Bean is here. Mr. Ortiz, would you please sit down by your client—

MR. ORTIZ: No, Your Honor, I will not, I'm sorry."

Respondent did not sit down, but remained with his client during the jury's review of the controversial exhibits and during the instruction to the jury. The jury, upon instruction, was sent to deliberate, and the trial judge turned his attention to the Respondent. The court found the Respondent in direct criminal contempt of the court for the disturbance created by Respondent's actions. He was sent to the Tippecanoe County jail.

Respondent was returned from the jail for the reading of the verdict and agreed to sit with, and represent his client "under protest." Thereafter, the Respondent apologized to the court and appeared for the sentencing hearing of his client.

The above described scenario establishes a course of conduct involving the direct defiance of the court. The Respondent was told to be seated numerous times and, in spite of the urging of every one in the

proceeding, Respondent steadfastly refused to be seated. He threatened to "walk," informed the court that he would not represent his client, and encouraged his client to participate in this pattern of recalcitrance by asking this client to "fire" him. The obvious intent of such conduct was to frustrate the orderly process of decision. These actions demonstrate an intent to disrupt a tribunal and, accordingly, violate Prof.Cond.R. 3.5(c). It is equally clear that Respondent's acts were in contravention of the Disciplinary Rules and were prejudicial to the administration of justice in violation of Prof.Cond.R. 8.4(a) and (d).

■ Having concluded that the Respondent engaged in misconduct, it is now the duty of this Court to impose an appropriate disciplinary sanction. The Hearing Officer, citing the Respondent's reputation for passionate representation and the need of the legal profession for this service, recommends that a public reprimand be imposed in this case. This Court, however, is not bound by such recommendation. *In re Rajan* (1988), Ind., 526 N.E.2d 1185; *In re Brown* (1987), Ind., 511 N.E.2d 1032; *In re Gibbs* (1971), 256 Ind. 692, 271 N.E.2d 729.

■ An examination of our previous decisions demonstrates that the determination of sanction in attorney disciplinary proceedings involves consideration of the disciplinary offense; actual or potential injury; the state of mind of the Respondent; the duty of this Court to preserve the integrity of the profession; the risk to the public, if any, in permitting the disciplined attorney to continue in the profession; and matters in mitigation, extenuation or aggravation which arise from the factual setting presented by the case. *In re Reed* (1992), Ind., 599 N.E.2d 601; *In re Wells* (1991), Ind., 572 N.E.2d 1290; *In re Smith* (1991), Ind., 572 N.E.2d 1280; *In re Coleman* (1991), Ind., 569 N.E.2d 631.

■ The findings in this case clearly establish that Respondent intentionally disrupted a proceeding, ostensibly as the result of an unfavorable decision by the trial court. There is no justification for this conduct, regardless of the need for effective representation. The "Comment" following Rule 3.5 states, in part, as follows:

"An advocate can present a cause, protect the record for subsequent review and preserve professional integrity by patient firmness no less effectively than by belligerence and theatrics."

Respondent would have been wise to follow the advice of the comment. His client would have been better served.

The record quoted above suggests that the Respondent intentionally endangered his client's interests by his histrionics. His threat to "walk out" in front of the jury was a declaration to the court that he was aware of the potential harm his conduct would create and that he would inflict this harm as a measure of his pique. And amid all of this confusion, hostility, and emotion sat a bewildered client who very simply expressed his state of mind as follows: "I don't know what in the hell is going on." Respondent's acts not only conflicted with the orderly administration of justice, they seriously threatened the appropriate interests served by effective representation.

This Court further notes that this is not the first time the Respondent has been disciplined for conduct as found in this case. [*In re Ortiz*, case number 49S00-9004-DI-299, "Order Approving Conditional Agreement and Imposing a Private Reprimand," (Indiana Supreme Court, September 20, 1990.)] In view of this history, the nature of the misconduct, our responsibility to protect the public from the harms created by misconduct of this nature, a period of suspension is warranted.

It is therefore ordered that, by reason of the misconduct found in this case, the Respondent is hereby suspended from the practice of law for a period of sixty (60) days beginning February 1, 1993. At the completion of such period of suspension, the Respondent shall be automatically reinstated as an attorney, subject to the procedures set forth in Admis.Disc.R. 23(4)(c).

Costs of this proceeding is assessed against the Respondent.

DICKSON, J., dissents as to the imposition of sanction and would impose a sus-

pension from the practice of law for a period no less than one year.