In the Matter of David B. SEXSON.

No. 49S00–9208–DI–627.

Supreme Court of Indiana.

May 14, 1993.

David B. Sexson, pro se.

Charles Kidd, Staff Atty., Indiana Supreme Court Disciplinary Com'n, Indianapolis, for the Indiana Supreme Court Disciplinary Com'n.

## DISCIPLINARY ACTION

PER CURIAM.

The Respondent in this case, David B. Sexson, has been charged with engaging in the representation of a client that was directly adverse to the interests of another client and thereby violating Rules 1.7(a) and 1.10(a) of the *Rules of Professional Conduct for Attorneys at Law.* In accordance with the procedure set forth in Ind. Admission and Discipline Rule 23, the Honorable Mary Lee Comer was appointed as Hearing Officer in this cause, conducted a hearing, and has tendered her findings and conclusions to this Court. Neither party has petitioned for review of the tendered findings.

■ In professional disciplinary cases in which there is no challenge to the tendered report of the Hearing Officer, the findings and conclusions are accepted, subject to this Court's right to reexamine, *de novo*, the proceedings below and reach an independent determination. *In re Ortiz* (1992), Ind., 604 N.E.2d 602; *In re Vogler* (1992), Ind., 587 N.E.2d 678; *In re Huebner* (1990), Ind., 561 N.E.2d 492.

Applying this process of review, we now find that the Respondent, an attorney subject to the disciplinary jurisdiction of this Court, at all times relevant to this proceeding, maintained an office in a remodeled home at 3035 South Keystone Avenue in Indianapolis, Indiana. Another attorney, Rollin E. Thompson, Respondent, and four other attorneys maintained offices at this location. All attorneys shared office space, shared one secretary, used a common letterhead as stationery, and used three common telephone lines. As a routine practice, the attorneys left their offices unlocked and the doors open. Attorney file cabinets could be observed by the clients of the other attorneys from a common hallway and conversations in the individual offices could be heard in this hallway.

In November 1987, Thompson was retained by the Zimmermans to handle a personal injury claim in which they were the plaintiffs. On February 25, 1991, while the personal injury claim was still pending, Mr. Zimmerman filed an action for dissolution of marriage; he was represented by an attorney unrelated to either Thompson or Respondent. At that time, Mrs. Zimmerman's mother was employed as a secretary for both Thompson and Respondent. Mrs. Zimmerman retained Respondent for the dissolution proceeding and on March 29, 1991, Respondent appeared for Mrs. Zimmerman and filed a cross-petition for dissolution of the marriage.

On July 15, 1991, Thompson settled the personal injury case for the Zimmermans. On July 18, 1991, Respondent filed, on behalf of Mrs. Zimmerman, a Petition for Contempt and a Restraining Order, seeking an order restraining Mr. Zimmerman from negotiating his settlement check. An order was issued *ex parte* to that effect on the date of filing. At approximately 11:00 a.m. on July 19, 1991, Mr. Zimmerman called Thompson to set a time to pick up his settlement check from the personal injury case. Upon arriving at the office one hour after making the call, Mr. Zimmerman was met by Respondent and served with the restraining order issued on July 18, 1991.

Respondent has been charged with violating Prof.Cond.R. 1.7(a) and 1.10(a). These rules provide as follows:

*Rule 1.7(a)* A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

*RULE 1.10(a)* While lawyers are associated in a firm, none of them shall represent a client if he knows or should know in the exercise of reasonable care and diligence that any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2.

As found above, the Respondent did not represent Mr. Zimmerman; Mr. and Mrs. Zimmerman were represented by Thompson in the personal injury matter. Respondent represented Mrs. Zimmerman in a separate domestic relations proceeding. Thus, in order to find misconduct on the part of the Respondent, we must conclude that Thompson was disqualified from representing Mrs. Zimmerman in the domestic relations proceeding and such disqualification can be imputed to Respondent.

■ Under Prof.Cond.R. 1.7(a), absent disclosure and consent, Thompson could not have represented Mrs. Zimmerman if such representation would have been directly adverse to Mr. Zimmerman. This Court has previously held that the representation of one marital party in a dissolution proceeding and the joint representation of the marital parties in other legal proceedings can constitute representation of adverse interests. *In re Colestock* 1984,

Ind., 461 N.E.2d 137. In the present case, Thompson was still representing the interests of Mr. and Mrs. Zimmerman when the dissolution was commenced and Respondent appeared and counter-petitioned. Mrs. Zimmerman's interests were adverse to Mr. Zimmerman. Thompson could not have represented Mrs. Zimmerman in the dissolution proceeding.

■ As to whether Thompson's disqualification can be imputed to Respondent, the issue is whether the office sharing arrangement of Respondent, Thompson, and the other attorneys constituted a "firm" under Prof.Cond.R. 1.10(a). This case presents our first opportunity to address an issue of this nature.

The "Comment" to Rule 1.10 notes that within the context of the professional disciplinary rules, the definition of "firm" is a question of fact. In such analysis, it is crucial to look at the level of association, the appearance of the association to the public, any specific agreements, access to confidential information, and the purpose of the rule. But in the end, as stated in this comment, if attorneys "present themselves to the public in a way suggesting that they are a firm or conduct themselves as a firm, they should be regarded as a firm for purposes of the Rules."

■ In the present case, Respondent, Thompson, and the other attorneys used common letterhead, shared phone lines, had apparent access to each other's confidential information, and shared office personnel. When Mr. Zimmerman made arrangements to get his settlement check, he was greeted by Respondent with a restraining order prohibiting him from negotiating the check. It was reasonable for Mr. Zimmerman to assume that Thompson and Respondent were part of a "firm", and it was equally reasonable for Mr. Zimmerman to conclude, that under these circumstances, Respondent engaged in adverse representation.

■ In view of the above analysis, we conclude that Respondent violated Prof. Cond.R. 1.7(a) and 1.10(a) as charged.

It is now our duty to assess an appropriate sanction. In this regard, we note that this case presents a single instance of misconduct. Additionally, there is no suggestion that either party gained an unwarranted financial recovery by reason of the conduct. The ultimate effect was that Mr. Zimmerman was made to conform his conduct to that as directed by a court. Respondent, by reason of his relationship with Thompson, however, should not have been the attorney to accomplish the result. This Court accordingly concludes that under the circumstances of this case, a reprimand is appropriate.

IT IS, THEREFORE, ORDERED that the Respondent, David B. Sexson, is reprimanded and admonished for engaging in conduct directly adverse to another client in violation of Rules 1.7(a) and 1.10(a) of the *Rules of Professional Conduct.*

Costs of this proceeding are assessed against Respondent.