**In the Matter of Frederick W. LACAVA.**

No. 49S00–8808–DI–709.

Supreme Court of Indiana.

June 9, 1993.

James H. Voyles, Robert G. Ziegler, Indianapolis, for respondent.

Donald R. Lundberg, Executive Secretary, Indianapolis, for Indiana Supreme Court Disciplinary Com'n.

PER CURIAM.

The Respondent in this case, Frederick LaCava, has been charged with knowingly disobeying an obligation under the rules of a tribunal, communicating *ex parte* with a party other than as authorized by law, and engaging in conduct prejudicial to the administration of law, in violation of Rules 3.4(c), 3.5(b), and 8.4(d) of the *Rules of Professional Conduct for Attorneys at Law*. The alleged misconduct stems from Respondent's representation of a doctor before a medical review panel under the Medical Malpractice Act. In accordance with Ind. Admission and Discipline Rule 23, the Honorable Dane P. Nash was appointed as Hearing Officer in this case. Following hearing, Judge Nash has now tendered his report which includes findings of fact, conclusions of law and recommendation of sanction. The Disciplinary Commission and the Respondent have petitioned for review of the Hearing Officer's report.

Upon review of the matters now before the Court, we find that the Respondent, Frederick W. LaCava, was employed in 1987 to represent Dr. Anthony Miller, a doctor of podiatric medicine, in a proposed malpractice action brought against Dr. Miller and two medical doctors under the Indiana Medical Malpractice Act, IC 16–9.5–1–1, *et seq.* Plaintiffs were represented by counsel.

The parties agreed to the appointment of Douglas J. Hill, an Indiana attorney, as chairman of the medical review panel. Pursuant to statute, plaintiffs nominated Dr. Irwin B. Malament, a doctor of podiatric medicine, to the panel. In his oath, Dr. Malament stated that "I have not and will not communicate with any party or representative of a party before rendering my opinion, except as authorized by law." At the time of nomination, the Respondent was representing Malament as a defendant in an unrelated medical malpractice action. Additionally, Malament and Respondent were social friends. The fact of such representation and social relationship was not disclosed to plaintiff's counsel or Hill. Doctors Alvin M. LoSasso and Charles M. Clark were also appointed to the panel; neither was a doctor of podiatric medicine.

On August 20, 1987, Hill convened a meeting of the panel. Following questioning by the attorneys, Hill advised the panel, in the presence of the attorneys, that if additional materials were needed, he (Hill) would contact the attorneys. The panel deliberated on the materials that were presented and unanimously agreed that Dr. Miller had failed to comply with the appropriate standard of care in treating the plaintiff. Hill agreed that he would prepare a written opinion of the panel and circulate it for their signatures.

Hill drafted the opinion and on August 24, 1987, mailed each medical member of the panel a copy. On the same day, Respondent telephoned Hill to inquire if additional information would be required. During the conversation, Hill volunteered that the panel had unanimously decided against Dr. Miller and that a written opinion was circulating for signatures. Hill did not tell Respondent that a written opinion had been signed by the panelists.

Shortly after speaking to Hill, Respondent telephoned Malament and angrily expressed surprise with the decision of the panel. Malament did not have an opportunity to respond during the conversation and described himself as having been "berated, and bombasted."

On the next day, Malament called Hill and informed Hill that he (Malament) had changed his mind about whether Dr. Miller had failed to meet the applicable standard of care. Malament did not tell Hill that about the conversation with the Respondent. After speaking with Malament, Hill called Respondent and left the message that Malament had changed his mind and that Respondent should not talk to him about the case. Respondent returned the call to Hill and advised him that he (Respondent) had already spoken with Malament on the day before.

In September, Dr. LoSasso informed Hill that he (LoSasso) had relied on Malament in reaching his decision and was not willing to recast a vote against Dr. Miller. Ultimately, on October 30, 1987, the panel en-

tered an opinion stating that the other two doctors did not fail to meet the applicable standard of care. The opinion went on to state no conclusion as to Dr. Miller with the understanding that the issues involving Dr. Miller would be submitted to another medical review panel. Respondent withdrew his representation of Dr. Miller; over the objection of plaintiffs, a second panel was convened; and on October 2, 1989, the second panel rendered an opinion finding that the evidence did not support the conclusion that Dr. Miller failed to meet the applicable standard of care as charged in the complaint.

The Hearing Officer concluded that the Respondent engaged in conduct prejudicial to the administration of justice in violation of Prof.Cond.R. 8.4(d), but found that the Disciplinary Commission did not prove by clear and convincing evidence that the Respondent knowingly disobeyed an obligation under the rules of a tribunal, in violation of Prof.Cond.R. 3.4(c) nor that the Respondent communicated *ex parte* with a judge, juror, prospective juror, or other official except as permitted by law, in violation Prof.Cond.R. 3.5(b). Respondent challenges the Hearing Officer's recommended conclusion of misconduct under Rule 8.4(d) and the Disciplinary Commission challenges the conclusion recommended as to Rule 3.5(b). Neither party challenges the Hearing Officer's recommended conclusion relating to Prof.Cond.R. 3.4(c).

■ Our findings set forth above, which are predicated on the stipulation of fact tendered by the parties, in good measure parallel the recommended findings of the Hearing Officer. The petitions for review filed in this case do not challenge these findings, but go to the conclusion of fact and law recommended by the Hearing Officer. In such cases, we note that this Court is not bound by the recommended conclusions of the Hearing Officer. *In re Lobdell* (1990), Ind., 562 N.E.2d 17; *In re Fox* (1989), Ind., 547 N.E.2d 850; *In re Brown* (1988), Ind., 524 N.E.2d 1291. Our conclusions are derived through a *de novo* examination of the entire record. *In re Lobdell, supra.*

Prof.Cond.R. 3.4(c) provides that "a lawyer shall not *knowingly* disobey an obligation under the rules of a tribunal...." (Our emphasis) We accept the Hearing Officer's conclusion that Respondent did not violate this rule under the circumstances presented in this case. There is insufficient evidence to conclude that Respondent engaged in a course of action which would constitute a violation under this provision.

■ We do not, on the other hand, accept the Hearing Officer's recommended conclusion of no misconduct under Prof. Cond.R. 3.5(b). In essence, this provision prohibits *ex parte* communication with judges, jurors, and other officials, except as permitted by law. Rule 3.9 attaches such prohibition to lawyers representing clients before administrative tribunals. The Hearing Officer, upon review of the commentary under Rule 3.9, concluded that in that the medical review panel was not a rulemaking or policy-making tribunal, the prohibition was not applicable. This Court does not so confine the operation of the rule.

A medical review panel is an integral part of the adversary process in the medical malpractice arena. The statutory procedure of the panel anticipates adversarial representation. (IC 16–9.5–9–5) Thereafter, the decision of the panel is admissible as expert opinion in subsequent judicial proceedings. (IC 16–9.5–9–9) This being the case, the entire dispositional process requires the appearance of fairness in the attainment of the panel's decision. Accordingly, just as the participants of a malpractice judicial proceeding must be free from *ex parte* communications, expert opinion derived in the adversary administrative pre-trial process must result from a process with the same limitations. We find that the members of the malpractice panel are "officials" within the confines of this rule. By contacting Dr. Malament before the decision was rendered, Respondent violated Prof.Cond.R. 3.5(c).

■ The third and final allegation of misconduct charged by the Commission is that Respondent, by communicating with Dr. Malament in contravention of IC 16–

9.5–9–5, engaged in conduct prejudicial to the administration of justice in violation of Prof.Cond.R. 8.4(d). The Hearing Officer recommends a finding in favor of the Commission under this charge. Respondent objects to such recommended conclusion.

In his petition for review, Respondent argues that the communication to Dr. Malament occurred under the mistaken impression that the decision had already been reached and IC 16–9.5–9–5 only prohibits communication before the decision is reached. Furthermore, Respondent asserts that the testimony of Dr. Malament conclusively established that he had already changed his mind before receiving the telephone call from the Respondent and the result of the litigation would have been the same with or without the call. This being the case, Respondent concludes that the Commission had failed to establish by clear and convincing evidence a violation of Rule 8.4(d). We do not accept this analysis.

IC 16–9.5–9–5 prohibits communication before a decision is rendered under Section 7, which requires the rendition of the written opinion by the panel. The Respondent is an experienced practitioner who can be assumed to understand that there is no decision until it is reduced to writing. When he contacted Dr. Malament, if he was not aware of these provisions, he should have been.

■ Additionally, whether or not Dr. Malament had or would have changed his mind, or whether the case outcome was impacted by the communication are really not relevant. In disciplinary proceedings, it is the conduct of the attorney, not the outcome of the underlying litigation, that determines whether or not there is a violation of the Rules. *In re Wireman* (1979), 270 Ind. 344, 367 N.E.2d 1368.

■ In the present matter, Respondent's conduct disrupted the orderly disposition of the issue under consideration and greatly degraded the perception of decisional fairness. Furthermore, his inappropriate communication spawned legitimate satellite litigation at the expense of the other participants. We find Respondent's acts to be conduct prejudicial to the administration of justice in violation of Prof.Cond.R. 8.4(d) as charged in the complaint.

Having found misconduct, it is now the duty of this Court to determine an appropriate disciplinary sanction. Applying the American Bar Association *Standards for Imposing Lawyer Discipline,* the Hearing Officer has recommended that Respondent receive a public reprimand for the misconduct found in this case. We favor the approach taken by the Hearing Officer.

Standard 3.0 of the A.B.A. *Standards for Imposing Lawyer Discipline* lists the following factors to be considered in imposing attorney disciplinary sanctions:

a) the duty violated;

b) the lawyer's mental state;

c) the actual or potential injury caused by the lawyer's misconduct; and

d) the existence of aggravating or mitigating factors.

These factors are consistent with the traditional analysis employed by this Court. See, *In re Ortiz* (1992), Ind., 604 N.E.2d 602; *In re Reed* (1992), Ind., 599 N.E.2d 601; *In re Wells* (1991), Ind., 572 N.E.2d 1290.

In our assessment of sanction, we observe that, at the time the medical review panel was formed, Respondent intentionally failed to disclose to opposing counsel his personal and professional relationships with an ostensibly impartial panel member. Although such disclosure is not required under the statute, we believe it to be prudent and fair for an attorney to advise the opposing side of relationships that detract from perceptions of impartiality. In the end, it was this relationship and association that led to Respondent's forceful communication with Dr. Malament.

We also find it troubling that Respondent shows absolutely no remorse for his conduct. The simple fact is that, before a final decision was rendered, Respondent communicated *ex parte* with an individual impartially considering the acts of Respondent's client. Respondent has defended his actions on a technical, narrow application of the statute. We cannot accept this ap-

proach. The issues of fundamental decisional fairness in this case are too obvious to permit credence in the overly technical arguments offered by Respondent.

Standard 6.33 provides that:

"Reprimand is generally appropriate when a lawyer is negligent in determining whether it is proper to engage in communication with an individual in the legal system, and caused injury or potential injury to a party or interference or potential interference with the outcome of the legal proceeding."

Although an argument could be made that the communication to Dr. Malament was more than negligent, we will accept the Hearing Officer's assessment of the totality of the evidence in this regard.

IT IS, THEREFORE, ORDERED that the Respondent, Frederick LaCava, is reprimanded and admonished for engaging in an *ex parte* communication with an official otherwise than as permitted as law in violation of Prof.Cond.R. 3.5(b) and engaging in conduct prejudicial to the administration of justice in violation of Prof.Cond.R. 8.4(d) of the *Rules of Professional Conduct*.

Costs of this proceeding are assessed against Respondent.