**In the Matter of Darrell S. THOMPSON.**

No. 27S00–8806–DI–578.

Supreme Court of Indiana.

Nov. 16, 1993.

Samuel R. Ardery, Bloomington, for respondent.

Jeffrey D. Todd, Staff Atty., Indianapolis, for Indiana Supreme Court Disciplinary Com'n.

PER CURIAM.

Darrell S. Thompson, the Respondent in this case, was charged in a three-count Verified Complaint for Disciplinary Action with numerous violations of the *Rules of Professional Conduct for Attorneys at Law* and the now-superseded *Code of Professional Responsibility for Attorneys at Law.* Pursuant to Ind.Admission and Discipline Rule 23, this Court appointed a hearing officer, who, after full hearing, filed findings of fact and conclusions of law with the Clerk of the Supreme Court of Indiana on May 21, 1992. Said findings were not transmitted or brought to this Court's attention by the Clerk until May 26, 1993. Neither party challenged the tendered report, and, we accept and adopt the findings contained therein.

**Count I.**

Respondent was admitted to the Indiana Bar on May 31, 1979, and is therefore subject to the disciplinary jurisdiction of this Court. Denny Short ("Short") and his mother, Landon Moore ("Moore") re-

tained Respondent in May, 1983, to represent their interests in a claim for damages arising out of an accident in which Short was involved. Respondent filed a complaint on October 31, 1984, in Grant Circuit Court, naming Lawrence J. Lee ("Lee") as defendant. In response thereto, Lee propounded interrogatories and a request for production of documents on May 8, 1985. Short and Moore provided Respondent with information necessary to respond. Respondent failed to provide it to Lee's counsel.

On June 17, 1986, Lee filed a motion for order compelling discovery regarding the May 8, 1985 discovery requests. The motion was granted. Respondent failed to advise his clients that the motion had been filed and granted. He also failed to comply with the order compelling discovery, which resulted in Lee filing a motion to dismiss. Respondent did not inform Short or Moore of the motion to dismiss. Hearing on the motion was delayed twice, each time after Respondent asserted that he would provide the requested discovery, which he never did. Pursuant to the motion, the court dismissed the case on September 23, 1986. Respondent failed to inform his clients of the dismissal.

On November 24, 1986, Respondent filed a motion to correct errors, requesting that the court vacate its order of dismissal. After hearing, the motion was denied. Respondent did not inform his clients of the filing, hearing, or denial of the motion.

In March, 1987, Respondent falsely advised Moore that he had settled the case for $6,500.00, and that Moore and Short would be entitled to $4,000.00 after deducting attorney's fees and expenses. Respondent notified Short and Moore on March 27, 1987, that he had "secured a payment" of $4,000.00. Short and Moore, believing the proceeds were from defendant's insurance company, agreed to the terms of settlement described by Respondent. On May 8, 1987, Respondent tendered to Moore a check for $4,000.00, drawn on Respondent's trust account. Respondent told Moore not to cash the check until May 11, 1987, as sufficient funds were not yet available in the account. Becoming suspicious, Moore presented the check to Respondent's bank for payment on May 8, but the bank refused to honor it. Moore then contacted Lee's counsel, who informed her that her action had been dismissed on September 23, 1986.

On May 11, 1987, Respondent told Moore that her case had been dismissed and that he was offering the $4,000.00 personally to remedy the situation. He asked her to sign a release if she planned to cash the check and told her he would stop payment of the check if she refused. He copied Moore's file for her and suggested she consult another attorney. Moore did not sign the release, and Respondent stopped payment of the check. Moore thereafter retained attorney Ken Wiker, who filed an action to collect $4,000.00 from Respondent on behalf of Moore and Short. Respondent has since paid Moore and Short more than $8,000.00.

Based on the foregoing, we conclude that Respondent violated Disciplinary Rule 6–101(A)(3) and Ind.Professional Conduct Rules 1.1 and 1.3 by neglecting a legal matter entrusted to him and by failing to provide competent representation to his client; and that he violated Prof.Cond.R. 8.4(a), (c), and (d) in that he engaged in conduct involving dishonesty, fraud, deceit, and misrepresentation, that he engaged in conduct prejudicial to the administration of justice, and that he attempted to violate the *Rules of Professional Conduct.*

## Count II.

In July, 1986, Larry and Lynda Mann ("the Manns") agreed to convey their residence to its previous owners, Mr. and Mrs. Thomas W. Michael ("the Michaels"), in full satisfaction of the Mann's contract debt on the house. In October, 1986, they hired Respondent to effect the transfer. The Manns subsequently filed for divorce, but agreed to allow Respondent to complete the real estate transfer. Each executed a limited power of attorney in favor of Respondent providing him with the authority to execute all necessary documents.

On December 10, 1986, Respondent misrepresented to Lynda Mann's attorney in the divorce, Roger R. Street, Jr., that the

transfer had taken place, and that she was no longer responsible for the property. Street twice asked Respondent, in letters dated December 17, 1986, and February 26, 1987, to provide him with written documentation evidencing transfer. Respondent failed to respond to either request. On March 6, 1987, Respondent executed an Assignment and Release of Real Estate Contract pertaining to the Manns' interest in the property and delivered it to the Michaels.

We conclude that by the aforesaid conduct, Respondent violated D.R. 6–101(A)(3), Prof.Cond.R. 1.3, D.R. 1–102(A)(1), (4), and (5), and Prof.Cond.R. 8.4(a), (c), and (d).

**Count III.**

Roberta Nelson ("Nelson") retained Respondent to handle the estate of Doris A. Nelson, who died in 1983. The estate was opened that same year in Grant Circuit Court. On January 17, 1984, Nelson gave Respondent a check for $1,256.55 for payment of inheritance tax after Respondent told her early payment of the tax would result in a discount to her. Respondent deposited the check in his trust account that same day, then transferred $200.00 of the funds to his business account, using the money for his own benefit. The next day, he transferred an additional $200.00 of these funds to his business account and used the funds for his own benefit. By February 13, 1984, the balance of the trust account in which Respondent had initially deposited the check from Nelson had fallen to $73.40.

On January 17, 1985, the Grant Circuit Court determined that inheritance taxes due on the estate amounted to $1,322.69. Nelson received written notice from the Indiana Department of Revenue on June 26, 1986, and November 7, 1986, that the taxes due on the estate had not been paid. After receiving each notice, she contacted Respondent, who assured her that the Department of Revenue had erred and that he had paid the tax. On July 15, 1988, Nelson received notice from the Grant County Prosecutor, informing her that the taxes had still not been paid, and that she would be summoned to appear in court if arrange-ments to pay were not made. Nelson then obtained a copy of the January 17, 1984, check she had given Respondent and delivered it to the Grant County Prosecutor's office. She confronted Respondent, who again claimed there was some mistake and assured her that he would look into the matter. On August 3, 1988, Respondent tendered to the Grant County Treasurer a check for $2,056.58 as payment for all taxes, penalties, and interest due on the estate. The check was written on Respondent's business account.

By this conduct, Respondent violated D.R. 1–102(A)(3) and Prof.Cond.R. 8.4(b) in that he committed a criminal act that reflects adversely on his honesty and trustworthiness as a lawyer by exercising unauthorized control over Nelson's funds for a period of more than four years, and D.R. 9–102(A) and Prof.Cond.R. 1.15(a) by failing to hold the property of his client that was in his possession in connection with a representation separate from his own property. Respondent also violated D.R. 6–101(A)(3) and Prof.Cond.R. 1.3.

█ Now that we have found misconduct, it is the duty of this Court to assess an appropriate sanction. In doing so, we look at the following factors: the duty violated; the lawyer's mental state; the actual or potential injury caused by the lawyer's misconduct; and factors in aggravation or mitigation. *In re LaCava* (1993), Ind., 615 N.E.2d 93, *In re Reed* (1992), Ind., 599 N.E.2d 601.

The hearing officer found several factors in mitigation. Respondent's parents were involved in a near-fatal automobile accident in November, 1984. Within two days of that, Respondent learned that his 15 year-old daughter was pregnant. On March 15, 1985, she gave birth to a child with severe mental and physical handicaps. Respondent and his wife adopted the child, bringing the total number of children in their home to six. Respondent's wife left him in November, 1986, leaving him as the sole provider and caretaker of the children. She did not return until February, 1987.

Further, during 1986 and 1987, Respondent received counseling from psychologist Brian Warner, who concluded that Respondent was in an "agitated depressive" state. Warner concluded that, as a result of this condition, Respondent inadvertently forgot, omitted, or confused detailed and work-related tasks without conscious intent.

Although these factors represent extenuating circumstances, they do not excuse Respondent's misconduct. Respondent's personal and emotional problems may have provided an environment in which he was more susceptible to various temptations, but the ultimate decisions leading to certain acts of misconduct were consciously made by Respondent.[1] Further, Respondent's acts of misrepresentation and commingling a client's funds with his own were the result of a specific intent to do so. Such intent is regarded as the most culpable mental state. See American Bar Association *Standards for Imposing Lawyer Sanctions,* Theoretical Framework. This Court is especially troubled by the pattern of untrustworthiness and intentional deceit that emerges from Respondent's course of conduct in each of the three counts.[2] As we have often noted, honesty and trust provide the foundation on which one of the basic components of law practice is built, that of the fiduciary obligation an attorney owes his client. Respondent has shown a dangerous and damaging tendency to violate that trust to the detriment of his clients.

Although we conclude that some of Respondent's acts of misconduct contain the element of intent, the mitigating factors to some extent temper the severity of his offenses. We are persuaded that Respondent's actions were not motivated by personal greed and were not the result of reckless indifference to the needs of his clients, but rather that they represent an unfortunate and ethically irresponsible course of action through which Respondent sought to cope with overwhelming personal problems.

Although a more severe sanction would be appropriate if not for the unique and compelling mitigating circumstances presented by this case, we conclude that a lengthy period of suspension is warranted. It is, therefore, ordered that the Respondent, Darrell S. Thompson, be suspended from the practice of law for a period of two (2) years, beginning December 20, 1993. At the conclusion of this period, he will be eligible for reinstatement provided he meets the requirements contained in Admis.Disc.R. 23, Section 4.

Costs of this proceeding are assessed against the Respondent.

---

1. We acknowledge Mr. Warner's opinion that Respondent forgot, omitted, or confused certain tasks without conscious intent due to his "agitated depressive" state. We conclude that this diagnosis corresponds with our findings that Respondent neglected legal matters entrusted to him and that he failed to provide competent legal representation. However, we are not persuaded that a mental state causing inadvertent lapses explains or excuses other components of Respondent's misconduct at issue here; namely his pattern of deceiving his clients and his exercising unauthorized control over client Nelson's funds. Such action in this case was not the result of inadvertent lapses in concentration, but rather the result of a conscious objective to achieve a certain outcome.

2. Conduct involving fraud, deceit, and misrepresentation was neither charged nor found in Count III. However, we are persuaded that Respondent deceived Nelson on several occasions by informing her that the inheritance tax on Doris A. Nelson's estate had been paid when in fact it was due and owing. The absence of a specific charge precludes us from making a formal finding of such a violation; however, we feel Respondent's conduct in this regard should be considered in the assessment of sanction.