**In the Matter of William J. GERARD.**

**No. 98S00–9208–DI–637.**

Supreme Court of Indiana.

May 12, 1994.

William J. Gerard, pro se.

Donald R. Lundberg, Executive Secretary, Indianapolis, for the Indiana Supreme Court Disciplinary Com'n.

## DISCIPLINARY ACTION

PER CURIAM.

William J. Gerard, an attorney admitted to practice law in Indiana, Illinois, Wisconsin, and Missouri, was charged in a complaint for disciplinary action with violations of the *Code of Professional Responsibility for Attorneys at Law*.[1] All charges arise out of Respondent Gerard's representation of an elderly client in 1985. Respondent's conduct in regard to this representation resulted in his suspension from the practice of law by the Illinois Supreme Court for a period of one (1) year pursuant to that court's resolution of the matter in *In re William J. Gerard* (1989), 548 N.E.2d 1051, 132 Ill.2d 507, 139 Ill.Dec. 495. Respondent was thereafter suspended from the practice of law by the supreme courts of Missouri and Wisconsin for that misconduct.

This Court appointed a Hearing Officer pursuant to Ind.Admission and Discipline Rule 23, Section 11. The parties subsequently submitted for this Court's approval a Statement of Circumstances and Conditional Agreement for Discipline pursuant to Admis.Disc.R. 23(11)(g). This Court rejected that agreement, and this action therefore proceeded to the hearing stage. After hearing, the Hearing Officer tendered to this Court his findings of fact and conclusions of law. Neither Respondent nor the Disciplinary Commission has petitioned this Court for review of the Hearing Officer's report. This matter is now before us for final resolution.

---

1. The charges reflect that the conduct at issue here took place while the now-superseded *Code of Professional Responsibility* was still in effect.

Since the Hearing Officer's findings of fact are unchallenged, we accept and adopt them.[2] Accordingly, we now find that Respondent was admitted to the Bar of this state on September 27, 1961, and is therefore subject to the disciplinary jurisdiction of this Court. In August, 1985, Ruth Randolph, 84 years old and hospitalized, retained Respondent to prepare her Last Will and Testament and to help her recover certain certificates of deposit which she believed had been lost or stolen. Respondent advised her that payment for his legal services could be made according to an hourly rate, or by contingency fee arrangement. Randolph chose the latter. On August 20, 1985, Respondent presented Randolph with a document setting the terms and conditions of their proposed contingency fee arrangement. It stated that Respondent was to receive "as a retainer an amount equal to one-third of all assets recovered ..." Randolph signed the document.

On August 22, 1985, Respondent billed Randolph $250.00 for preparing her will. During the following month, Respondent busied himself by contacting all lending institutions that Randolph believed had issued certificates of deposit to her. Respondent's search uncovered twenty-three (23) such certificates, all safely deposited in accounts under Randolph's name, with an aggregate value of $453,443.37. Respondent's actions in identifying and collecting the certificates were largely administrative in nature and required no specific legal skill. He claims to have spent one hundred and sixty (160) hours in this effort.

Respondent cashed thirteen (13) of the certificates, transferring their proceeds to a pour-over trust that he had created when he prepared Randolph's will. He also cashed the remaining ten (10) certificates, keeping the proceeds, which amounted to $159,648.60, for himself.

Randolph died in August, 1986. The executor of Randolph's estate filed a lawsuit against Respondent seeking return of the fee. In response thereto, Respondent renegotiated his fee, and repaid $131,648.60 to the estate, keeping $28,000.00 for his services.[3]

By virtue of his being disciplined by the proper authorities of another state where he practices, Respondent has created grounds which subject him to discipline in this state. Admis.Disc.R. 23(2)(b).[4]

■ The Hearing Officer found that, by his conduct set out above, Respondent violated Disciplinary Rule 2–105(A), which provides that "[a] lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee." Although there is no blanket definition of what constitutes an "excessive fee," Disciplinary Rule 2–105(B) provides that a fee will be deemed clearly excessive when a "lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee." Factors to be considered in this assessment are as follow:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the service.

---

**2.** In his report to this Court, the Hearing Officer incorporated by reference extensive factual findings of the Illinois Supreme Court relative to the conduct forming the basis of this action.

**3.** Respondent kept the $28,000.00 as remuneration for 160 hours of service at his customary rate of $175.00 per hour.

**4.** Additionally, we note that under the *Rules of Professional Conduct for Attorneys at Law,* all lawyers admitted to practice in Indiana are subject to the disciplinary authority of this jurisdiction, even though they may be engaged in law practice elsewhere.

(8) Whether the fee is fixed or contingent. D.R. 2–105(B).[5] Moreover, whether or not the fee charged is excessive is a question of public import; it has an impact on the availability of legal services to the public, the administration of justice, and, ultimately, reflects on the attorney's professional status. *In re Smith* (1991), Ind., 572 N.E.2d 1280, 1288. Excessive cost of legal service deters the public from using the legal system in the protection of rights. *Id.* Therefore, charging and collecting excessive legal fees may rise to the level of professional misconduct without there being any evidence of the factors enumerated in Disciplinary Rule 2–105(B). *Id.* at 1289.

■ However, here we find evidence relating to some of the enumerated factors. Locating and collecting Randolph's certificates did not take significant time or labor, presented no novel or difficult legal issues, took no special legal skill, and likely did not preclude Respondent from undertaking other legal matters. Randolph imposed no stringent time limitations upon Respondent. These factors, coupled with this Court's duty to protect the public from unscrupulous tactics by attorneys, convince us that a fee of over $150,000.00 for several weeks of work locating and collecting bank documents is clearly excessive. This conclusion comports with previous disciplinary cases in which excessive fees were found. See *In re Smith*, 572 N.E.2d 1280 (attorney's and executor's fees of $300,000.00 found to be clearly excessive for handling of a large estate that was simple to administer and required no unique skills); *In re Shaul* (1992), Ind., 592 N.E.2d 687 (attorney's fees of $3,100.00 found to be clearly excessive for handling estates where attorney never completed their administration).

■ The Hearing Officer concluded that there was no independent violation of Disciplinary Rule 1–102(A)(4), pursuant to which Respondent is charged with engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. This Court is not bound by the recommended conclusions of the Hearing Officer. *In re LaCava* (1993), Ind.,

615 N.E.2d 93, *In re Lobdell* (1990), Ind., 562 N.E.2d 17. Our conclusions are derived through a *de novo* examination of the entire record. *In re Lobdell.*

■ Specifically, the Hearing Officer found no evidence Respondent knew collection of Randolph's assets would be a simple, uncontested matter until after Randolph signed the contingency fee agreement. However, a more important fact is that Respondent did not renegotiate his fee after realizing his client's entitlement to the certificates was not seriously in doubt, but instead nonetheless accepted the inflated contingency fee. Such action is fraudulent. Disciplinary proceedings are neither criminal nor civil, but instead arise from the inherent powers of courts over their officers. *In re Roberts* (1983), Ind., 442 N.E.2d 986. Therefore, civil or criminal law definitions are generally not controlling in these actions, but merely instructive. In this regard, we note that the traditional elements of fraud are a false material representation of past or existing facts, made with knowledge or reckless ignorance of falsity, which causes reliance to the detriment of those relying on the representation. *Comfax Corp. v. North American Van Lines, Inc.,* (1992), Ind.App., 587 N.E.2d 118. Implicit in Respondent's retention of the excessive fee was the false representation that the service he provided to Randolph roughly corresponded with the amount of compensation. His purposeful retention of the excessive fee, beyond that point in time when it should have been apparent to him that it was in excess of a reasonable fee, indicates an intent to deceive. We therefore agree with the Illinois Supreme Court that, for purposes of our disciplinary rules, the enormity of Respondent's fee in relation to the amount of service rendered is fraudulent. See *In re Gerard,* 548 N.E.2d 1051, 1058, 1059, 139 Ill.Dec. 495, 502, 503 ("[c]ollecting an excessive fee in and of itself can constitute fraud subject to discipline under Rule 1–102(A)(4)."). We thus conclude that Respondent violated Disciplinary Rule 1–102(A)(4).

---

**5.** The corresponding rule contained in the *Rules of Professional Conduct* contains virtually identical provisions. See Ind.Professional Conduct Rule 1.5(a).

Having found misconduct, it is now the duty of this Court to assess an appropriate disciplinary sanction. Included among the factors we examine in this analysis are the nature of the misconduct and factors in aggravation and mitigation. *In re Clanin* (1993), Ind., 619 N.E.2d 269, 270. Respondent's acts in securing the inflated fee represent greedy overreaching. His proper course of action would have been to renegotiate his fee after it became apparent that collection of Randolph's assets was a simple, uncontested matter. His failure to immediately do so indicates a conscious attempt to secure an excessive fee, which imparts added culpability to Respondent's acts.

The Hearing Officer concluded that Respondent's eventual full restitution of the excessive fee to Randolph's estate is a mitigating circumstance. However, Respondent did not return the fee until faced with legal action; a fact which, in our minds, negates the utility of restitution as a mitigator in this case. Forced or compelled restitution is neither an aggravating nor a mitigating circumstance in the assessment of disciplinary sanction. *In re Hanley* (1994), Ind., 627 N.E.2d 800.

In light of the above considerations, we are convinced that a period of suspension is warranted to protect the public and to warn other practitioners that misconduct of this sort will not be tolerated.

It is, therefore, ordered that the Respondent, William J. Gerard, be suspended from the practice of law for a period of not less than one year, beginning June 10, 1994, at the conclusion of which he may petition this Court for reinstatement, subject to the provisions contained in Admis.Disc.R. 23(4).

Costs of this proceeding are assessed against the Respondent.