**In the Matter of Dennis J. GROTRIAN.**

**No. 02S00–9111–DI–890.**

Supreme Court of Indiana.

Jan. 4, 1994.

Charles A. Asher, South Bend, for respondent.

Jeffrey D. Todd, Staff Atty., Indianapolis, for Indiana Supreme Court Disciplinary Com'n.

### DISCIPLINARY ACTION

PER CURIAM.

The Indiana Supreme Court Disciplinary Commission charged Respondent, Dennis J. Grotrian, in a two count Complaint for Disciplinary Action with engaging in professional misconduct. A hearing officer appointed by this court pursuant to Admission and Discipline Rule 23 heard the evidence and tendered his findings, conclusion and recommendation. The second count of the complaint was dismissed upon the Commission's motion. Pursuant to Respondent's voluntary agreement, this court, on September 28, 1992, suspended Respondent pending final outcome of this proceeding. At the hearing of this case, Respondent fully acknowledged his misconduct. Neither party has petitioned for review, although each has filed a memorandum on a proposed sanction.

The matter is now before us for final judgment. The review process employed in disciplinary matters entails a *de novo* examination of the record. However, when the hearing officer's findings of fact are unchallenged, as in this case, they are accepted, but this court reserves the right to evaluate such finding and reach a final determination as to misconduct. *In re Ortiz* (1992), Ind., 604 N.E.2d 602; *In re Vogler* (1992), Ind., 587 N.E.2d 678; *In re Huebner* (1990), Ind., 561 N.E.2d 492.

Accordingly, we find that the Respondent was admitted to the Bar of this state in 1971 and is, thus, subject to this court's disciplinary jurisdiction. During December of 1986, Respondent established a professional partnership with three other attorneys. During the Spring of 1987, the part-

nership obtained a $50,000 line of credit from a bank in Fort Wayne, Indiana. The line of credit was renewed in 1988 and was eventually paid in full on September 7, 1989, thereby extinguishing the obligation.

In early January, 1990, Respondent announced his resignation from the partnership. All parties agreed to an office sharing arrangement whereby Respondent was to operate as a sole practitioner, and the other three attorneys remained in a partnership. On January 12, 1990, Respondent met with one of the remaining partners to discuss the possibility of renewing the old partnership line of credit for the benefit of Respondent so that he could meet the operational costs of his new practice. He offered to give the remaining three partners a promissory note. However, they refused to borrow money in the name of a partnership that no longer existed and so advised Respondent on January 15, 1990.

Despite knowing his former partners' refusal to renew the line of credit and without their knowledge or consent, on January 24, 1990, Respondent renewed the line of credit in the name of the old partnership. Without the knowledge or consent of his former partners, Respondent delivered to the bank the following three documents, all bearing the signatures of the former partners which signatures Respondent had forged:

1. A Partnership Resolution dated October 10, 1989, under which any one of the four original partners was purportedly given authority by each of the others to act on behalf of the partnership;

2. Three Continuing Guarantees of Payment, each dated October 10, 1989, and each signed by one of the three remaining partners personally obligating each to repay any draws on the line of credit; and

3. A Renewal Commercial Note, dated January 24, 1990, renewing the $50,000 line of credit in the name of the original partnership of four.

Between January 29, 1990, and March 30, 1990, Respondent made four withdrawals totaling $50,000. He did this without the knowledge or consent of his former part-

ners. Respondent used all of the funds for his sole benefit and not for any purpose relating to the old partnership.

Respondent's acts came to light on April 12, 1990, when the bank sent a notice to the old partnership indicating that $546.51 in interest was due on April 20, 1990, on the partnership's loan. That same day, Respondent was confronted with this information. He admitted his obligation and promised to repay the loan no later than April 16, 1990, which was the next business day. True to his promise, Respondent repaid the entire loan on April 16, 1990.

In preparing for the trial of this disciplinary case, the Disciplinary Commission took Respondent's deposition on June 29, 1992. During the course of this deposition, Respondent perjured himself in several respects. He testified that the four original partners continued to operate as a partnership through February of 1990; that some of the documents submitted to the bank had been signed by his former partners; that one of the former partners first approached the bank about the renewal of the line of credit; that the documents necessary for renewal were given to Respondent by one of the former partners who requested that Respondent sign the same and obtain the line of credit; that Respondent didn't believe he had forged his former partners' signatures to the guarantees; and that he withdrew funds through the line of credit for purposes of satisfying partnership obligations. None of these statements were true. At the hearing of this case, Respondent admitted that he had perjured himself during the deposition.

A conclusion of misconduct is undisputed. Respondent's acts constitute forgery under IC 35-43-5-2. Such criminal conduct involves dishonesty, fraud, and deceit, and reflects adversely on Respondent's honesty, trustworthiness, and fitness as a lawyer, in violation of Rules 8.4(b) and (c) of the *Rules of Professional Conduct for Attorneys at Law.*

Having determined that Respondent engaged in professional misconduct, it is now this court's responsibility to assess an

appropriate sanction. This analysis involves an examination of the nature and entire course of Respondent's actions, any consequences that flow from the misconduct, the state of mind of the Respondent, the duty of this Court to preserve the integrity of the profession, the risk to the public, and any exacerbating or mitigating factors. *In re Jarrett* (1992) Ind., 602 N.E.2d 131.

■ We note that the hearing officer also found several mitigating factors. Prior to this incident, Respondent had enjoyed a good reputation in the community and has no disciplinary record. The hearing officer particularly found that Respondent's acts were out of character and reflected psychological and economic stress factors which had been building for several years. This led the hearing officer to conclude that it is highly unlikely that the conduct will be repeated. Respondent has admitted the wrongful nature of his acts and has not attempted to minimize the gravity of his misconduct. He has taken steps toward rehabilitation and has voluntarily begun a program of psychotherapy in order to deal with problems relating to his misconduct. Although he offers no justification or excuse, he is truly remorseful.

These factors convinced the hearing officer that Respondent can return to the practice of law in the future and maintain the high ethical standards expected of a lawyer.

The deceitful nature of Respondent's acts indicates a serious character flaw. Even more alarming is the Respondent's attempt to perpetuate the hopeless lie during the investigative stage of this proceeding by giving perjured testimony. The hearing officer observed that Respondent's acts were so blatant and detection so inevitable as to render the conduct irrational or intended for detection. This observation, coupled with the extensive mitigating factors, including the immediate repayment of the loan and Respondent's efforts at rehabilitation, lead us to agree with the hearing officer's recommendation for a two year suspension, beginning on the date of Respondent's temporary suspension. At the conclusion of the suspension, Respondent will become eligible to petition for reinstatement pursuant to Admission and Discipline Rule 23, Section 4, and establish that he can safely be recommended as a member of the Bar and an officer of the courts. It is, therefore, ordered that Dennis J. Grotrian is hereby suspended from the practice of law for a period of two (2) years, beginning September 28, 1992.

Costs of this proceeding are assessed against Respondent.