## In the Matter of Nora E. PEOPLES.

### No. 49S00–9212–DI–1006.

Supreme Court of Indiana.

Feb. 14, 1995.

Nora E. Peoples, pro se.

David B. Hughes, Staff Atty., Indianapolis, for Indiana Supreme Court Disciplinary Com'n.

## DISCIPLINARY ACTION

PER CURIAM.

The Disciplinary Commission has charged the Respondent, Nora E. Peoples, with numerous violations of the *Rules of Professional Conduct for Attorneys at Law*. The con-

duct giving rise to the allegations centers on the Respondent's use of rented automobiles. The Commission's verified complaint for disciplinary action is in four counts.

This Court appointed a hearing officer, pursuant to Ind.Admission and Discipline Rule 23, Section 11, who, following full hearing, tendered to this Court his findings of fact and conclusions of law. The hearing officer made no recommendation as to sanction. Respondent, after having been granted two continuances (totaling 75 days) during which to file with this Court a petition for review of the hearing officer's findings, failed to timely do so.[1] Respondent did file an untimely petition for review which contained no citations to the record. As such, this Court may review this matter as if no such petition had been filed. See In re Antcliff (1994), Ind., 629 N.E.2d 848; In re Geron (1985), Ind., 486 N.E.2d 514, 515; Admis.Disc.R. 23(15)(c) (requiring petitions for review alleging error in factual findings to be accompanied by a record of all the evidence before the hearing officer relating to the factual issues in question). However, we have given due consideration to Respondent's petition.

Respondent is presently suspended pursuant to this Court's opinion and order resolving a prior disciplinary action against her. In re Peoples (1993), Ind., 614 N.E.2d 555 (ninety-day suspension imposed, followed by two-year period of probation, for five counts of delay and neglect). Her suspension was continued indefinitely by this Court on December 17, 1993, due to her failure to abide by the specific terms conditioning her automatic reinstatement.

The present matter is now before us for final judgment. The review process employed in disciplinary matters entails a de novo examination of the record. Even where the hearing officer's factual findings are unchallenged, they are accepted with the reservation that this Court has the right to evaluate such findings and reach a final determination as to misconduct. In re Grotrian (1994), Ind., 626 N.E.2d 807; In re Huebner (1990), Ind., 561 N.E.2d 492.

We therefore now find that the Respondent was admitted to the Bar of this state in 1982, and thus is subject to this Court's disciplinary jurisdiction. Initially, we note that, in his findings, the hearing officer states that Respondent failed to participate as ordered in the pre-hearing discovery process, and in general exhibited "total disdain" for the disciplinary process.

Under Count I, we now find that on September 11, 1991, Respondent rented a Chevrolet Lumina automobile from National Car Rental ("National"), pursuant to a rental contract requiring her to return the automobile one week later. She failed to return the vehicle as agreed. National contacted Respondent, and on November 11, 1991, negotiated an extension agreement with her that required the vehicle's return one month from the date of the agreement. On December 11, 1991, Respondent again rented the Chevrolet for an additional period, to conclude on January 6, 1992, and thereafter extended the rental until February 3, 1992. On February 6, she rented another Chevrolet from National to replace the first, and signed a new rental agreement, tendering a check drawn on her law office checking account for $505.28. The check purported to be in payment of rental charges incurred up to February 3, 1992. That check was later returned due to non-sufficient funds. On February 14, Respondent informed National that the bank had erroneously returned the check, since her account there was protected by an "overdraft mechanism." In fact, the account had no such feature. Respondent issued a replacement check to National, which was also later returned due to inadequate funds.

On February 14, via certified letter, National demanded that Respondent return the Chevrolet she had rented on February 6. The letter advised that if return was not

1. In her motions for extension of time to file her petition for review, Respondent contends that she was never served with the hearing officer's findings and conclusions. We do not agree with this contention, since, in addition to the service indicated in the finding's certificate of service, a second copy was forwarded to Respondent on July 12, 1994, following her assertion that she had not received a copy. Accordingly, we deny Respondent's motion to strike the hearing officer's findings and conclusions due to improper service.

effectuated within 72 hours, National would proceed under applicable criminal laws to obtain a warrant for Respondent's arrest. On March 17, National demanded payment of rental fees still owing as a result of the returned checks. National warned that the matter would be referred to local law enforcement authorities if payment was not forthcoming within five days. During the next eleven months, National also resorted to other methods in its attempts to retrieve the Chevrolet and collect monies owing, including use of a collection agency, hiring several individuals to locate and repossess the automobile, employing an attorney to secure its return, and filing a replevin action in small claims court.

Additionally, National filed a grievance against Respondent with the Disciplinary Commission on March 27, 1992. The Commission assigned investigation of the matter to the Indianapolis Bar Association. Despite being contacted several times by bar association representatives, Respondent failed to provide a written or verbal response.

On February 3, 1993, an agent of National located and repossessed the Chevrolet in a parking garage at the condominium where Respondent resided. By that time, National claimed Respondent owed it in excess of $6,000.00 for loss of reasonable rental value of the vehicle from February 6, 1992, until February 3, 1993. Respondent never paid any portion of this sum.

Under Count II, we now find that on June 27, 1988, Respondent rented a Plymouth Sundance automobile from an Indianapolis branch of Budget Rent-A-Car ("Budget"), and tendered at that time a $100.00 cash deposit. She returned the vehicle on August 22, 1988, having paid nothing in addition to the initial deposit. Thereafter, Budget sent Respondent an invoice reflecting $802.05 owing in rental fees. Respondent claimed she never received the invoice.

On March 23, 1989, Budget filed suit against Respondent to recover the sums owing. Budget obtained a default judgment on April 25, 1989, due to Respondent's failure to appear and defend the action. She later succeeded in setting aside the default judgment. The matter then proceeded to trial on

December 13, 1990, at the conclusion of which the trial court found in favor of Budget and entered judgment against Respondent in the amount of $1,012.44. Despite prolonged efforts, Budget has been unsuccessful in collecting any portion of this judgment.

Pursuant to Count III, we now find that Respondent rented a Plymouth Acclaim automobile from Avis Rent-A-Car Systems, Inc. ("Avis") on June 6, 1991, after signing a written rental agreement requiring return of the vehicle by June 26, 1991. She failed to return the vehicle by that date, prompting Avis to make numerous attempts to contact Respondent during July. Avis succeeded in contacting Respondent several times during this period, but was apparently unsuccessful in securing return of its vehicle.

On July 8, 1991, Avis advised Respondent, via certified letter, that she risked criminal prosecution if the Plymouth was not returned by the next day. Although the letter was received by an agent of Respondent, Respondent failed to return the vehicle as requested. On July 22, 1991, an Avis employee repossessed the Plymouth in a parking lot in Indianapolis. Avis was subsequently successful in charging to Respondent's Visa account $1,163.40 in remuneration for rental charges incurred.

Under Count IV, we find that Respondent rented a Chevrolet Corsica automobile from the Indianapolis branch of Spirit Rent-A-Car ("Spirit") on August 8, 1992, after informing Spirit personnel that she would need the vehicle only two or three days. She ultimately kept the vehicle longer, and, at various intervals between August 8 and September 14, 1992, paid Spirit a total of $784.66 in rental fees.

Spirit decided to close its Indianapolis branch at the end of the September, 1992. Prior to the closing date, Spirit's Indianapolis office manager left several recorded messages on Respondent's telephone answering machine over a period of weeks, requesting return of the vehicle to the Spirit prior to its planned closing. Respondent failed to reply, and failed to return the vehicle. On October 10, 1992, Spirit's district manager advised Respondent by letter that Respondent was

twenty-five days behind in rental payments, and that she had violated her rental agreement. Respondent was advised to return the vehicle to the Spirit's Indianapolis office and bring her account up to date no later than October 16, 1992. Failure to return the vehicle, the letter advised, would result in involvement of local law enforcement. An agent of Respondent signed the letter's certified receipt on November 6, 1992.

On October 15, 1992, Spirit informed its insurer of its inability to secure the vehicle's return. That same day, Spirit informed the National Crime Information Center that its rental vehicle had been stolen. At some point, Spirit also informed the Marion County Sheriff that its vehicle was stolen. On February 3, 1993, a detective of the Marion County Sheriff's Department located and seized the Chevrolet in a parking lot in Indianapolis. Respondent has never paid Spirit for the period she retained unauthorized control over the vehicle.

Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate a lack of those characteristics relevant to law practice. *Comment* to Ind.Professional Conduct Rule. 8.4; *In re Eddingfield* (1991), 572 N.E.2d 1293. Here, Respondent's actions, although not directly involving law practice or service to her clients, reflect adversely on her fitness to practice law in that they indicate character flaws incompatible with duties the practice of law entails. *See In re Walker* (1992), 597 N.E.2d 1271, 1272, *amended,* 601 N.E.2d 327 (nexus must exist between the respondent's misconduct and his duties to client, the courts, or the legal system). We conclude, therefore, that by the aforesaid conduct in Counts I through IV, Respondent violated Ind.Professional Conduct Rule 8.4(b) by engaging in a criminal act, conversion, that reflects adversely on her honesty, trustworthiness, and fitness as a lawyer in other respects. She also violated Prof.Cond.R. 8.4(c) by engaging in conduct involving dishonesty, fraud, deceit, and misrepresentation.

Because of our finding of misconduct, we must now assess an appropriate disciplinary sanction. In doing so, we examine several relevant factors, including the duty violated, the nature of the misconduct, any resultant actual or potential harm occasioned by the misconduct, the state of mind of the respondent, and factors in aggravation and mitigation. *In re LaCava* (1993), Ind., 615 N.E.2d 93; *In re Transki* (1993), Ind., 620 N.E.2d 16.

Respondent's consistent failure to return the vehicles, despite the rental companies' exhaustive efforts to secure their return, demonstrates that her misconduct is the product of more than mere oversight. Respondent's pattern of dishonest and deceitful conduct here is alarming. Rental agencies unfortunate enough to have done business with Respondent suffered significant economic loss as a result. Further, Respondent's obvious disrespect for the disciplinary process, as lamented by the hearing officer, indicates to us that she either fails to understand the seriousness of her actions, or that she simply does not care. Although we are aware, as noted above, that her conduct here did not involve activities directly related to law practice, her actions do indicate that she has consistently failed to exhibit the personal integrity required of members of this state's Bar, and that therefore she should be removed from law practice until such time that she proves her fitness to re-enter the profession.

It is, therefore, ordered that Respondent Nora E. Peoples be suspended from the practice of law for a period of not less than two (2) years, effective immediately, at the conclusion of which she may petition this Court for reinstatement, subject to the provisions of Admis.Disc.R. 23(4). Accordingly, Respondent's opportunity for automatic reinstatement as set forth in *In re Peoples,* 614 N.E.2d 555, is hereby revoked.

Costs of this proceeding are assessed against Respondent.

SELBY, J., not participating.