**In the Matter of James A. FLETCHER**

**No. 98S00–9406–DI–563.**

Supreme Court of Indiana.

May 27, 1998.

Ronald E. Elberger, Indianapolis, for Respondent.

Donald R. Lundberg, Executive Secretary, David Hughes, Trial Counsel, Indianapolis, for the Indiana Supreme Court Disciplinary Commission,

## DISCIPLINARY ACTION

PER CURIAM.

The respondent, an Illinois attorney, argues in this disciplinary action that the hearing officer's finding that he made a false statement of material fact to a trial court judge is erroneous. This matter is now before us for final resolution. Our review in attorney disciplinary actions is *de novo* in

nature, and in resolving the issues presented we examine the entire record in the case. *Matter of Lobdell,* 562 N.E.2d 17 (Ind.1990).

This case commenced in 1994 with the Disciplinary Commission's *Verified Complaint for Disciplinary Action* which alleged that the respondent made a false statement of material fact to Judge James Heuer of the Whitley County, Indiana Circuit Court while the respondent represented the defendants in a civil action while admitted *pro hac vice* in that court. In this disciplinary action, prior to trial on the merits, the respondent challenged this Court's disciplinary authority, arguing that because he is not an attorney licensed to practice law in this state and due to the expiration of his *pro hac vice* appointment, this Court has no jurisdiction in this matter. We denied his motion to dismiss for lack of jurisdiction, holding that both the Indiana Constitution and our Admission and Discipline Rules provide that anyone practicing law in this state, whether licensed as an attorney in this state or not, is subject to this Court's authority to regulate the practice of law within this state's borders. *Matter of Fletcher,* 655 N.E.2d 58 (Ind.1995).

As the final finders of fact on the merits of this case, we now find that in 1992, the respondent was admitted *pro hac vice* as counsel for the defendants in the civil case pending in the Whitley Circuit Court. The case was vigorously contested at trial stretching from November 16 until December 2, 1992. On November 18, 1992, plaintiff's counsel opted to subpoena two of the defendants to testify during trial the following morning as plaintiff's witnesses. Subpoenas were prepared and delivered to the local sheriff for service upon the target defendants (the "defendants"), who were staying at the Lee's Inn motel in Columbia City (the "local motel"). At approximately 7:00 p.m. that night, a deputy sheriff spoke to the motel desk clerk, then proceeded to Room 108 and knocked. One of the defendants answered the door. The deputy asked if the man was one of the target defendants, and the man either said nothing or denied that he was. He then asked if the man was the respondent, and the man replied that he was not

and slammed the door. Through the closed door, the deputy explained that he had subpoenas to deliver, but received no response. The deputy returned to the desk clerk to verify that Room 101 was registered to the defendants or someone connected to the litigation. He later taped the subpoenas across the door knob of Room 101 when further attempts to directly contact the individuals inside failed.[1]

While the deputy was attempting to serve the subpoenas, one of the defendants telephoned the office of their local counsel and spoke with the respondent, telling him that the deputy sheriff was at their motel attempting service. The respondent drove to the motel, arriving at the same time as local police and another sheriff's deputy. The respondent instructed the defendants to stay in their motel room until he appraised the situation. The police informed the respondent that they received a call from a woman associated with the plaintiffs who complained that the defendants harassed her because of the service of the subpoenas. The respondent assured the police that there would be no more trouble. He then found the subpoenas taped to the door of Room 101. He suggested that the defendants stay in a hotel in Fort Wayne for the remainder of the evening, which they did.

The next day in court, the issue of the validity of service of the subpoenas was argued before Judge Heuer. Central to the resolution of valid service was the whereabouts of the target defendants the night before. The respondent argued that the subpoenas were not served in accordance with the Rules of Trial Procedure. During the hearing, the following exchange occurred:

Judge Heuer: Did you meet with your client last night?

Respondent: No, I did not, Your Honor. I talked to them on the telephone.

Judge Heuer: Did you inform him of the subpoena?

Respondent: I told them that we had found subpoenas taped to the door of [the] motel room. Yes.

---

1. Room 108 was registered to the defendants; Room 101 was registered to co-counsel for the defendants.

At evidentiary hearing of this disciplinary case, the respondent argued that he merely "misspoke" when answering Judge Heuer as to whether he had met with the target defendants the night before. He contends that he did not consider his brief encounter with them a "meeting." The hearing officer found that an attorney with the respondent's trial experience knew or should have known that Judge Heuer's inquiry was not about a formal meeting but rather an effort to learn the target defendants' physical location at the time of attempted service and that fact impacted the validity of service. The hearing officer therefore concluded that the respondent violated Ind.Professional Conduct Rule 3.3(a)(1) [2] by knowingly making a false statement of material fact to a tribunal and Prof. Cond.R. 8.4(d) by engaging in conduct that is prejudicial to the administration of justice.

■ The respondent, pursuant to Admis.Disc.R. 23(15), has petitioned this Court for review of the hearing officer's findings of fact and conclusions of law. The respondent first contends that several of the hearing officer's findings of fact are unsupported by the evidence adduced at hearing. For example, the respondent asserts that the hearing officer's finding which implies that the defendant who answered the door was able to hear the deputy ask him if he was the target of the subpoena is erroneous, since that defendant was 86 years old at the time and suffered from significant hearing loss. The respondent also argues that it is somehow important for us to accept that, contrary to the hearing officer's findings, he did not tell local law enforcement that there would be no more trouble the night of November and that he did not suggest that the defendants move to a Fort Wayne hotel the night of November 18. We find that the respondent's arguments of factual error have no merit because, even if we were to find such errors, they are irrelevant to resolution of whether the respondent misled the court.

The respondent next argues that, although he "misspoke" in response to Judge Heuer's question when he stated that he had not met with this client the night of November 18, he did not know he was deceiving the court and had no intent to do so. Specifically, he argues that his theory supporting failure of the deputy to effect valid service of the subpoenas focused on where the subpoenas had been left, and not whether the defendants were present during attempted service. Accordingly, the argument goes, the issue of where the defendants were was, in the respondent's mind, irrelevant and any misstatement on his part as to the issue of their location on November 18 was inadvertent and inconsequential.[3]

■ The respondent's argument fails. Even assuming, *arguendo*, that it is true that Judge Heuer failed to expressly articulate to the respondent that his emphasis was on the physical presence of the defendants, it is not unreasonable to expect that an attorney like the respondent with 18 years of legal experience would have been cognizant of the importance of where the defendants were during attempted service in addition to whether the subpoenas were delivered to the proper room. Further, the respondent's testimony during disciplinary hearing demonstrates that he knew that Judge Heuer sought to learn whether the defendants were at the motel during the deputy's visit. The respondent indicated to the judge that he did not meet with his clients, but that he talked to

---

**2.** The hearing officer's report identifies that violation as contravening Prof.Cond.R. 8.4(a). We view his misidentification of the provision as inadvertent.

**3.** Specifically, the respondent asserts that his theory of the inadequacy of the service was based on Ind.Trial Rule 45(C) which, in 1992, provided that service of subpoenas may be made in the same manner as provided in Rule 4.1. Indiana Trial Rule 4.1, in relevant part, provided that service could be made on an individual by "delivering a copy to him personally" or by "leaving a copy at his dwelling house or usual place of abode." By 1995 amendment, T.R. 45(C) was amended to provide that service may also be accomplished in the same manner as that provided in T.R. 4.16(A), which in turn provides that it is the duty of every person served under the rules to "cooperate, accept service, comply with the provisions of these rules, ... and acknowledge receipt of the papers." The respondent argues that, unbeknownst to him, Judge Heuer viewed the adequacy of service of the subpoenas from the perspective of whether the target defendants were at the motel and if they refused service, while the respondent viewed the issue of the adequacy of service as whether the deputy left the subpoenas on the door of the correct dwelling or abode.

them on the telephone. The only legally significant inference that can be drawn from that statement is that, by replying that the only contact was by telephone, the defendants were effectively removed from the local motel during the time in question. The judge's following question—Did you inform the defendants of the subpoena?—clearly indicated that the judge still at that point believed that the defendants were not at the motel that night. The intent of the judge's questioning, i.e., to ascertain the whereabouts of the defendants at the time of attempted service, was clearly revealed by that follow up question. The respondent made no effort to clarify his answer. Further, at disciplinary hearing, the respondent testified that

> When the judge asked me the question . . . I wasn't sure why *he wanted to know where I met with my clients* when he asked me the question. (Emphasis added).

The respondent's own testimony indicates that he knew full well that Judge Heuer sought to know where the respondent met his clients, not in what manner he communicated with them.[4]

■ The respondent states that Judge Heuer should have explicitly asked the respondent where his clients were the night of November 18. He opines that no attorney should be subjected to discipline for an inability to answer a judge's unexpressed question. With that argument, the respondent is attempting a method of attacking the hearing officer's conclusions that this Court has consistently rejected: seeking to diminish the totality of the circumstances by artfully isolating the components. *Matter of Moore*, 665 N.E.2d 40 (Ind.1996). Evidence should not be weighed in fragmentary parts, but rather viewed as a whole to see or understand the pattern which it presents. *Matter of Pawlowski*, 240 Ind. 412, 165 N.E.2d 595 (1960).

When viewed as a whole, his exchange with Judge Heuer on November 18 reveals that the respondent led the judge to believe that the defendants were not at the local motel the night when service of the subpoenas took place. That misrepresentation occurred in response to questioning that put the respondent on notice that the judge sought to ascertain the physical location of the defendants as relevant to the service issue. To that end, it is not dispositive that each and every question asked by Judge Heuer relative to that inquiry was not perfectly phrased or formulated with pinpoint precision. What is dispositive is that the respondent actively concealed from Judge Heuer the fact that the defendants occupied the local motel during the time the deputy attempted service of the subpoenas upon them. As such, his misrepresentations were material and knowing, and thus violative of Prof.Cond.R. 3.3(a)(1). We find further that his statements were deceitful and misrepresentative in violation of Prof. Cond.R. 8.4(c), and prejudicial to the administration of justice in violation of Prof. Cond.R. 8.4(d).

■ Having found misconduct, we turn to the issue of proper sanction. The respondent's misconduct has serious implications for our perception of his ability truthfully and within the bounds of the law to represent individuals before Indiana tribunals. His actions clearly disrupted the administration of justice in Judge Heuer's court. His lack of candor resulted in additional time, expense, and expenditure of judicial resources that otherwise would have been unnecessary. Judge Heuer ultimately found that there had been effective service of the subpoenas, and, later, scheduled a show cause proceeding to afford the defendants the opportunity to show cause why they should not have been held in contempt of court for failure to honor

---

4. We are further persuaded that the respondent intentionally misled Judge Heuer by his statements preceding his claim that he had not met with this clients the night before. Specifically, the respondent told the court that the night of November 18:

> I got back to the motel, when I got back to the motel, what we found is that there were two subpoenas taped to the door of room 101 . . . I talked to my clients. My clients spent the night in Fort Wayne . . . at a motel in Fort

Wayne, and they told me that they were never served a copy of the subpoena by anybody . . . And, therefore, they had not been given good service . . .

The respondent's statement strongly suggests that his clients were never at the local motel the night service was attempted, and further indicates his awareness that "good service" could be argued to be predicated upon Judge Heuer's theory of actual service upon the defendants.

the subpoenas. His ultimate resolution of that issue necessitated that he go to the further trouble to report the respondent's misconduct to the Disciplinary Commission. In light of these considerations, we feel it is necessary to protect the public, profession, and courts from further deceitful acts of the respondent, as well as to indicate that misconduct of this kind will not be tolerated in this state. However, since the respondent is not licensed to practice law in this state, but appeared in the Whitley Circuit Court civil action on a *pro hac vice* appointment, this Court's sanctions cannot include direct impingement on his Illinois law license. *Matter of Fletcher*, 655 N.E.2d at 61. We can, however, take steps to punish or prevent misconduct that occurs incident to the practice of law in this state.

It is, therefore ordered that the respondent, James A. Fletcher, may not apply to be admitted to practice law in this state *pro hac vice* for a period of two years from the date of this opinion. Further, he is assessed the costs of this proceeding.

The clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the Federal District Courts in this state, and the clerk of the United States Bankruptcy Court in this state with the last known address of respondent as reflected in the records of the Clerk.

The clerk of this Court is further directed to furnish a copy of this Order to the Supreme Court of the state of Illinois and to the Illinois attorney disciplinary commission.