ATTORNEY FOR RESPONDENT
Donald R. Lundberg
Indianapolis, Indiana

ATTORNEYS FOR THE INDIANA SUPREME COURT
DISCIPLINARY COMMISSION
G. Michael Witte, Executive Director
Angie Ordway, Staff Attorney
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 01S00-1604-DI-188

FILED
May 17 2017, 10:15 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE MATTER OF:

JOSEPH M. JOHNSON III,

*Respondent.*

Attorney Discipline Action
Hearing Officer Robert C. Reiling, Jr.

**May 17, 2017**

**Per Curiam.**

We find that Respondent, Joseph M. Johnson III, committed attorney misconduct in connection with his pattern of harassment of an ex-girlfriend. For this misconduct, we conclude that Respondent should be suspended for at least one year without automatic reinstatement.

This matter is before the Court on the report of the hearing officer appointed by this Court to hear evidence on the Indiana Supreme Court Disciplinary Commission's "Verified Complaint for Disciplinary Action," and on the post-hearing briefing by the parties. Respondent's 2003 admission to this state's bar subjects him to this Court's disciplinary jurisdiction. *See* IND. CONST. art. 7, § 4.

## Procedural Background and Facts

During most relevant times, Respondent was the chief public defender in Adams County. He also was married. In 2010, Respondent had an affair with "Jane Doe" ("J.D.") that ended after several months.

In March 2014, Respondent ran into J.D., who was at the courthouse in connection with her conviction for operating while intoxicated. A short time later, at Respondent's behest J.D. met him for dinner at a restaurant, and Respondent told J.D. that his wife was leaving him. Thereafter, Respondent began persistently calling J.D. J.D. told Respondent she did not wish to have a relationship with him and repeatedly told him to stop contacting her, to no avail. During one of these calls, Respondent was crying and J.D. overheard Respondent shoot a gun several times.

Respondent continued to call and text J.D. and contact her through Facebook. Respondent also appeared uninvited at J.D.'s apartment, stood in the doorway and prevented J.D. from closing the door, and refused to leave. The police were summoned and Respondent was issued a No Trespass Order.

Respondent persisted in calling and texting J.D., and he additionally attempted to contact J.D. through her roommate. J.D. continued to plead with Respondent to stop contacting her, still to no avail. A police officer told Respondent to cease contacting J.D. and never to go to her residence again. Respondent responded to J.D. by threatening to have her children taken from her and to create trouble for J.D. through her probation officer.

At one point, Respondent sent an identical text message to J.D. five times in a single day, and during the overnight hours of the following morning Respondent placed a hard copy of the text outside J.D.'s front door. J.D. immediately reported this to the police. Later that day, Respondent traveled to J.D.'s apartment, arriving at the same time J.D.'s children were dropped off by the school bus. J.D. hurried her children inside. Respondent entered the building and stood outside J.D.'s apartment. J.D. was terrified of these actions. A police officer confronted

2

Respondent later that evening and demanded he cease all contact with J.D., once again to no avail.

J.D. obtained a protective order against Respondent. When an officer served Respondent with the order, Respondent responded by telling the officer that J.D. had violated her probation. Respondent later made similar reports to J.D.'s probation officer. Attempting to leverage his role as public defender, Respondent continued to contact J.D.'s probation officer to see if a violation would be filed. J.D. admitted having a glass of wine at dinner with Respondent, and as a consequence she received a 10-day sentence, suspended on condition she not violate probation again.

The Indiana State Police ("ISP") became involved, and Respondent was arrested and charged with two misdemeanor counts of trespass and one felony count of making a false statement. In October 2014, Respondent was found guilty of one count of trespass. He was placed on informal probation, one condition of which was that Respondent could not contact J.D.

About one and a half months after Respondent's conviction, Respondent phoned the restaurant where J.D. worked. Later that day, Respondent saw "A.F.", a friend of J.D. who recently had been arrested for driving while suspended, at the courthouse. Respondent called A.F. and lured her into a meeting at his law office, telling her to come in through the back door. At the meeting Respondent inquired about where J.D. was living and whether she had a boyfriend, and attempted to persuade A.F. to get J.D. to call him. A.F. left, and Respondent later texted A.F. and asked that she keep their conversation secret.

Meanwhile, ISP was investigating Respondent for his ongoing stalking and harassment of J.D. and violation of the protective order. Respondent called the state trooper who was investigating the case, berating the trooper and threatening to contact the trooper's superiors.

Although J.D. moved from her apartment, Respondent successfully tracked J.D. to her new residence. Despite his criminal trespass conviction and the protective order, on multiple

occasions in May 2015 Respondent drove by J.D.'s house, parked across the street, or slowed down to stare at J.D.

During much of this time, Respondent suffered from a progression of mental illness – including depression, manic episodes, and bipolar disorder – that the hearing officer found had a nexus to some, but not all, of Respondent's misconduct.

**Discussion**

The Commission alleged, and the hearing officer concluded following an evidentiary hearing, that Respondent violated the following Indiana Rules of Professional Conduct:

8.4(b): Committing a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer.

8.4(d): Engaging in conduct prejudicial to the administration of justice.

8.4(e): Stating or implying an ability to influence improperly a government agency or official.

Both parties have petitioned for review. While the parties' briefs are directed largely toward the question of sanction, we briefly address Respondent's challenges to the hearing officer's findings of rule violations. Regarding Rule 8.4(b), Respondent attempts to argue that his criminal conduct was limited to the particular acts during April 2014 that gave rise to his conviction for trespass,[1] and he contends those particular acts lack the rule's requisite nexus to his legal practice. In a somewhat similar vein, Respondent argues in reference to Rule 8.4(d) that none of his actions impeded or changed the result of any proceeding, and he argues in reference to Rule 8.4(e) that his threatened actions were not improper because J.D. in fact did violate her probation by having a glass of wine at dinner with Respondent. These arguments are

---

[1] In addition to the act of trespass for which Respondent was convicted, the Commission also alleged Respondent violated Rule 8.4(b) by committing stalking, harassment, and invasion of privacy. The hearing officer made no explicit findings or conclusions on these latter allegations. Because it does not impact our analysis, we need not determine whether Respondent's pattern of misconduct encompassed criminal stalking, harassment, or invasion of privacy, and we therefore accept for argument's sake Respondent's contention that his criminal acts were limited to trespass.

4

wholly unavailing under the facts and circumstances of this case. Respondent's trespass was not an isolated event, but rather part and parcel of a pattern of related conduct involving J.D. that spanned well over a year. Respondent's position as chief public defender played an integral role, both in the events serving as the factual predicate for his conviction and in numerous other events composing his pattern of misconduct.[2] Respondent succeeded in leveraging his position to induce J.D.'s probation officer to file a violation against J.D., and his efforts in this regard were not undertaken for the purpose of fulfilling his professional duties but rather to coerce J.D. into talking with him. Respondent attempted to similarly leverage his position during his interactions with police, albeit with less success. In sum, there is ample support in the record for all three violations found by the hearing officer. Accordingly, we concur in the hearing officer's conclusions that Respondent violated Rules 8.4(b), 8.4(d), and 8.4(e).

Our analysis of appropriate discipline includes consideration of the nature of the misconduct, the duties violated by the respondent, any resulting or potential harm, the respondent's state of mind, our duty to preserve the integrity of the profession, the risk to the public should we allow the respondent to continue in practice, and matters in aggravation and mitigation. *See* Matter of Keaton, 29 N.E.3d 103, 110 (Ind. 2015); Matter of Usher, 987 N.E.2d 1080, 1089-90 (Ind. 2013).

Misconduct of a similar nature prompted us to impose disbarment in Keaton and a suspension of at least three years without automatic reinstatement in Usher. The nexus shown between Respondent's mental illness and his misconduct serves to distinguish the instant case from Keaton and Usher, but only to a point. We agree with the hearing officer that Respondent's mental illness is a mitigating factor but does not excuse his misconduct. *See* Matter of Montgomery, 2 N.E.3d 1261 (Ind. 2014); Matter of Transki, 948 N.E.2d 1181 (Ind. 2011). We also agree with the hearing officer that, while some of Respondent's actions can be traced to manic episodes he was experiencing, other actions committed by Respondent as part of his long-

---

[2] To cite just one illustrative example of the nexus between Respondent's criminal conduct and his law practice, immediately following the acts that served as the factual predicate for Respondent's trespass conviction, Respondent sent a series of text messages to J.D. stating that Respondent would be meeting with J.D.'s probation officer, that the judge presiding over J.D.'s criminal case (who Respondent described as "my old buddy") likely would punish a probation violation harshly, that J.D. risked having her children taken from her, and that "it is in my power to make your life hell."

running pattern of misconduct involving J.D. occurred during periods when Respondent was receiving treatment and the symptoms of his mental illness had somewhat abated.

Respondent urges us not to impose any period of active suspension, while the Commission requests a suspension of at least two years without automatic reinstatement. Both parties' positions are informed in large part by their respective views regarding the degree to which Respondent's misconduct can be attributed to his mental illness. Respondent's position also factors in the notion that his misconduct bore no nexus to his law practice, a notion we categorically reject. Upon consideration of the materials before us and the above-cited cases, we conclude that a significant period of active suspension is warranted and that Respondent must be required to go through the reinstatement process before resuming the practice of law.

## Conclusion

The Court concludes that Respondent violated Professional Conduct Rules 8.4(b), 8.4(d), and 8.4(e) in connection with his pattern of harassment of J.D. For Respondent's professional misconduct, the Court suspends Respondent from the practice of law in this state for a period of not less than one year, without automatic reinstatement, beginning June 28, 2017. Respondent shall not undertake any new legal matters between service of this opinion and the effective date of the suspension, and Respondent shall fulfill all the duties of a suspended attorney under Admission and Discipline Rule 23(26). At the conclusion of the minimum period of suspension, Respondent may petition this Court for reinstatement to the practice of law in this state, provided Respondent pays the costs of this proceeding, fulfills the duties of a suspended attorney, and satisfies the requirements for reinstatement of Admission and Discipline Rule 23(18). The costs of this proceeding are assessed against Respondent, and the hearing officer appointed in this case is discharged.

All Justices concur.